Benjamin Swede and Grace Swede, et al. [1] v. Commissioner. Swede v. Commissioner
Docket Nos. 49968, 49969, 52854, 52997, 54778, 54779, 54821.
United States Tax Court
T.C. Memo 1960-166; 1960 Tax Ct. Memo LEXIS 123; 19 T.C.M. (CCH) 887; T.C.M. (RIA) 60166; August 18, 1960
Morris Lavine, Esq., for the petitioners. J. Earl Gardner, Esq., for the respondent. *124 MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined the following deficiencies and additions to tax: The Swede Company, Inc.
Deficiency
Fiscal
Declared
Year
Value
Docket
Ending
Income
Excess
Excess
Prof-
Prof-
No.
11/30
Tax
its Tax
its Tax
Total
Sec.
293(b) [2]
49969
1949
$10,823.70
$10,823.70
$ 5,411.85
52854
1950
13,875.44
13,875.44
1,446.91 *
6,937.72
54821
1939
$ 1,427.20
$ 1,343.32
$ 2,770.52
$ 1,385.26
1940
3,915.07
552.74
4,467.81
2,233.91
1941
2,684.23
426.02
$ 492.14
3,602.39
1,801.20
1942
2,499.10
1,171.54
9,980.06
13,650.70
7,442.26
1943
(1,388.59)
2,651.98
24,632.16
25,895.55
13,670.80
1944
4,419.28
370.27
4,789.55
2,394.78
1945
1,982.63
13,840.81
81,145.25
96,968.69
48,484.56
1946
30,678.59
5,655.98
36,334.57
18,167.29
1947
25,522.14
25,522.14
12,761.07
1948
2,846.39
2,846.39
1,423.20
1951
36,228.57
36,228.57
18,114.29
1952
16,102.88
16,102.88
0
*125 Benjamin E. Swede
Docket
Calendar
Additions to Tax
No.
Year
Deficiency
§ 293(b)
§ 294(d)(2)
54779
1939
$ 1,260.76
$ 630.38
1940
3,027.05
1,513.53
1941
4,252.25
2,126.13
1942
11,856.86
5,928.43
1943
14,204.75
7,102.38
$ 883.92
1944
6,394.92
3,197.46
357.05
1945
90,196.17
45,098.09
5,404.08
1946
54,522.05
27,261.03
3,228.66
1947
36,461.77
18,473.08
2,271.71
Benjamin E. Swede and Grace J. Swede, Husband and Wife
49968
1949
$ 6,436.34
$3,218.17
52997
1950
11,627.32
5,813.66
$544.37
54778
1948
2,942.94
1,471.47
150.05
1951
6,916.38
3,458.19
477.91
1952
8,050.46
4,025.23
468.48
Respondent concedes on brief that there are no deficiencies in the income tax of Benjamin E. Swede and his wife, Grace, or additions to tax in the years 1948 (Docket No. 54778) and 1950 (Docket No. 52997). The issues are: 1. Whether Benjamin E. Swede failed to report certain income in each of the years 1939 through 1947 (Docket No. 54779) and whether he and his wife, Grace, failed to report certain income in the years 1949 (Docket No. 49968) and 1951 (Docket No. 54778) as computed by the *126 respondent under the net worth plus nondeductible expenditures method; 2. Whether any of the unreported income of Benjamin E. Swede and his wife, through 1951, had its source in The Swede Company, Inc., thereby constituting unreported income of such corporation for each of the fiscal years ending November 30, 1939 through 1951; 3. Whether a portion of the compensation paid by The Swede Company, Inc. to Grace Swede was properly disallowed as a deduction in the fiscal years ending November 30, 1943 through 1952; 4. Whether the respondent properly disallowed $5,000 in officers' salaries paid by The Swede Company, Inc. as deductions in each of the fiscal years ending November 30, 1942 and 1943; 5. Whether salary deductions of $15,288.46 and $15,288.36 claimed by The Swede Company, Inc. were properly disallowed by the respondent in each of the fiscal years ending November 30, 1945 and 1946; 6. Whether a deduction for a capital stock tax of $312.50 claimed by The Swede Company, Inc. in the fiscal year ending November 30, 1945 was properly disallowed; 7. Whether the respondent correctly disallowed a portion of the depreciation on delivery equipment claimed by The Swede Company, *127 Inc. in each of the fiscal years ending November 30, 1946 through 1952; 8. Whether the respondent properly disallowed a portion of the depreciation deduction on a leasehold improvement claimed by The Swede Company, Inc. in the fiscal years ending 1951 and 1952; 9. Whether the income of Little Princess of California, a corporation, for the fiscal years ending September 30, 1951 and 1952 should be included in the income of The Swede Company, Inc. for the fiscal years ending November 30, 1951 and 1952, respectively; 10. Whether purported legal and accounting fees in the amount of $19,400 claimed as a deduction by The Swede Company, Inc. in the fiscal year ending November 30, 1952 were properly disallowed; 11. Whether a portion of the deductions claimed by The Swede Company, Inc. for entertainment and travel expenses in the fiscal year ending November 30, 1952 was properly disallowed by the respondent; 12. Whether the respondent properly disallowed a deduction of $7,081.81 claimed by The Swede Company, Inc. for purported bonuses paid to its employees in the fiscal year ending November 30, 1952; 13. Whether the respondent properly disallowed deductions claimed by The Swede Company, *128 Inc. in the fiscal year ending November 30, 1952 for contributions, $314.46, taxes in the amount of $90 and shipping department supplies in the amount of $2,000; 14. Whether the purported excessive salary paid by The Swede Company, Inc. to Grace Swede in the years 1942 through 1947 constituted a constructive dividend from the corporation to Benjamin E. Swede; 15. Whether the deductions claimed by Benjamin E. Swede for medical expenses in 1942 and 1944 were properly computed; 16. Whether a deduction of $200 claimed by Benjamin E. Swede in 1947 for certain charitable contributions was properly disallowed by the respondent; 17. Whether certain partnership income and profits should be included in Benjamin E. Swede's gross income for 1947; 18. Whether interest income of $1,000 is includible in the gross income of Benjamin and Grace Swede for the year 1952; 19. Whether Benjamin E. Swede received constructive dividends of $13,802.78 from The Swede Company, Inc. in 1952; 20. Whether a part of the deficiencies of The Swede Company, Inc. for the years 1939 through 1951, of Benjamin E. Swede for the years 1939 through 1947, and of Benjamin E. and Grace Swede for 1949, 1951 and 1952 *129 was due to fraud with intent to evade tax within the meaning of section 293(b); 21. Whether the returns of The Swede Company, Inc. for the fiscal years ending November 30, 1939 through November 30, 1948 were false or fraudulent returns with intent to evade tax; 22. Whether the returns of Benjamin E. Swede for the years 1939 through 1947 were false or fraudulent with intent to evade tax; 23. Whether The Swede Company, Inc. is liable for additions to tax under section 291(a) in the amount of $1,446.91 for the fiscal year ending November 30, 1950; 24. Whether Benjamin E. Swede is liable for additions to tax under section 294(d)(2) for the years 1943 through 1947; 25. Whether Benjamin E. and Grace Swede are liable for additions to tax under section 294(d)(2) for the years 1951 and 1952. Findings of Fact Some of the facts have been stipulated and they are hereby incorporated by this reference. Benjamin E. and Grace Swede, husband and wife, are residents of Los Angeles, California. Benjamin filed individual income tax returns for the years 1939 through 1947 and joint income tax returns with his wife for the years 1948 through 1952, with the then collector of internal revenue *130 at Los Angeles, California. Benjamin E. Swede will hereinafter be called Ben or the petitioner. The Swede Company, Inc., incorporated under the laws of the State of California in 1937, has its principal place of business in Los Angeles, California. It filed its returns for the fiscal years November 30, 1939 through 1952 with the then collector of internal revenue at Los Angeles, California. The Swede Company, Inc. will hereinafter sometimes be called the corporation. The corporation throughout the period here involved was primarily engaged in the manufacturing and jobbing of ladies' blouses. A substantial portion of its sales was to large chain stores, such as J. C. Penney, Montgomery Ward and Sears Roebuck. Petitioner's father started a small blouse business about 1934 and it was operated by him or with other members of the family until the incorporation date, January 4, 1937. The original outstanding stock of three shares of common was held, one each, by Maxwell and Robert Swede, who were brothers of the petitioner, and Adelaide Swede. The original corporate officers were Maxwell, president, Robert, secretary, and Adelaide, treasurer. By the end of 1937 the outstanding common *131 stock of the corporation was increased to 1,000 shares, held in equal shares by the three original stockholders. Prior to September 1931 the petitioner operated a dress business in Pennsylvania. On September 5, 1931 he filed a voluntary petition in bankruptcy in the District Court of the United States for the Eastern District of Pennsylvania. Bankruptcy hearings were held on various dates up to May 1936 and the petitioner was unable to obtain his discharge in bankruptcy. The bankruptcy file disclosed debts of about $46,000 and assets of about $33,000. Petitioner paid the final debts of the bankruptcy in 1946 when he paid his creditors the amount of $4,336. During the years 1931 to 1936 the petitioner operated his mother's small business, a women's ready-to-wear store in Pennsylvania. During the years 1931 through 1937 the petitioner did not file any income tax returns or pay any income tax. Petitioner became active in the business of his father some time in 1936 and early in 1938 he became assistant secretary of the corporation. By January 1941 he was treasurer and by January 1945 he was president of the corporation. The remaining officers on this latter date were Grace Swede, *132 secretary, and Frances Norbell (sister of Grace Swede), treasurer. These officers, with petitioner as president, remained from 1945 throughout the remaining period here involved. In January 1939 the outstanding common stock of the corporation was held as follows: Maxwell, 533 1/3 shares, Robert, 533 1/3 shares, Adelaide, 458 1/3 shares and petitioner, 75 shares. In October 1939 Robert and Adelaide made gifts of all of their stock to Maxwell and Ben in such proportions that each owned 800 shares of the total outstanding common stock of 1,600 shares. On or about January 24, 1945, petitioner acquired the 800 shares of common stock owned by Maxwell and from that date throughout the period here involved the petitioner was the sole stockholder of the corporation. On or about December 4, 1946 a stock dividend of 4,400 shares of common was issued to the petitioner, bringing his total stock ownership to 6,000 shares, which remained constant throughout the period here involved. On or about August 1, 1944 Otis Gallant and his brother, Edwin, formed a partnership with petitioner and his brother, Robert, for the purpose of jobbing women's sportswear. The business was conducted across the hall *133 from The Swede Company, Inc. The Gallant brothers contributed $50,000 as an initial investment, while the Swede brothers contributed their business experience, but no funds. The partnership was known as the Gallant-Swede Co. and the profits or losses were to be allocated 50 per cent to the Gallant brothers and 50 per cent to the Swede brothers. Originally petitioner was to receive 40 per cent of the partnership profits and Robert, 10 per cent, but this was subsequently changed in 1945 in the articles of partnership so that petitioner and Robert each were to receive 25 per cent. The partnership ceased to function in the fall of 1946 and its assets were distributed in 1947. On or about November 30, 1945 a business known as The Little Princess, Inc. was incorporated under the laws of the State of California. The corporation was engaged in the manufacture and jobbing of children's wear from the date of incorporation throughout the period here involved. From on or about June 25, 1947 the petitioner owned all of the outstanding stock in the corporation. On or about April 30, 1948 the petitioner and Michael Vargas, as equal copartners, formed a partnership known as the Michael Vargas Manufacturing *134 Company. The principal business of the partnership consisted of manufacturing and jobbing ladies' blouses from the date of formation throughout the period here involved. In 1949 The Swede Company, Inc. started a bonus plan which distributed to certain employees a percentage of net profits. In addition to the petitioner, the participants in the bonus plan were RobertSwede, John Fulmer, Fred Purdue and Michael Vargas and the percentages allotted to these last four named employees in the years 1949, 1950 and 1951 ranged from 5 per cent to 19 per cent. Grace Swede was the principal bookkeeper for The Swede Company, Inc. in 1939 and 1940. Petitioner and Grace were married on October 8, 1939. Grace remained in the employ of the corporation from 1940 through 1952, during which time she performed various duties, including corporate personnel problems and some designing work. In 1940 Ellyn Sutherland began to perform the principal bookkeeping duties of the corporation and continued to do so until 1949. In 1949 Frances Norbell, a sister of Grace Swede, became principal bookkeeper of the corporation after Ellyn Sutherland left. Fred Purdue was auditor and comptroller of the corporation from *135 December 1, 1949 until July 1952 and in addition to his regular duties, he prepared the Federal income tax returns for petitioner and The Swede Company, Inc. during the years 1944 through 1951. Purdue also handled the books and records of the other business ventures with which the petitioner was connected. From 1939 through 1944 accounting services were performed for The Swede Company, Inc. by a certified public accountant. During the years 1939 through 1952 occasional cash sales were made on the premises of The Swede Company, Inc. during the noon hour to customers who, for the most part, worked for other firms in the same building. The items sold were remnants and blouses, usually damaged or discontinued styles, and the price for these garments ranged from $.50 to several dollars. Beginning in 1945 a record was kept of the noon hour sales. In addition to the noon hour sales the corporation regularly made sales to outside customers on the basis of orders received and also made some few sales to purchasers who came to the premises and paid cash for small quantities of merchandise, ranging from two dozen to five dozen garments. During the year 1944 Maxwell Swede expressed his dissatisfaction *136 with the policies of The Swede Company, Inc. In December 1944 an agreement of employment was executed between Maxwell and the corporation under which Maxwell was to receive compensation of $1,250 per month for a term commencing with the first day of December 1944 to and including the 31st day of July 1946. Paragraph IV of the agreement provided as follows: "The duties of Party of the Second Part shall be to advise and consult with the General Manager hereof and to perform the duties of Assistant Secretary. Said Party of the Second Part shall only be required to devote such time unto the performance of his said services as he in his absolute, arbitrary and uncontrolled discretion shall deem necessary or proper for the performance thereof. Party of the Second Part shall not be subject to discharge for any cause or upon any ground whatsoever, this contract constituting an absolute contract of employment for the time and upon the compensation herein provided." On or about January 24, 1945 the petitioner acquired the 800 shares of common stock of The Swede Company, Inc. owned by Maxwell Swede. In 1945 the petitioner subscribed to $200,000 of United States Treasury Bonds bearing interest *137 at 2 1/2 per cent. He cashed $55,000 of United States E, F and G Savings Bonds and applied the proceeds to the purchase price of the 2 1/2 per cent bonds. Petitioner also borrowed $130,000 from two banks to help finance the purchase. In addition, he borrowed an undisclosed amount from a third bank for the same purpose. Subsequently, these bonds were pledged at various times as collateral for loans obtained for The Swede Company, Inc. Petitioner reported in his 1946 Federal income tax return interest from "U.S. Bonds" in the amount of $4,750. In 1953 an action was brought by RobertSwede against the petitioner in the Superior Court of the State of California in which Robert claimed ownership of $25,000 of the 2 1/2 per cent bonds, as well as recovery of an amount in excess of $10,000, representing an interest in the liquidated assets of the Gallant-Swede partnership. This action was settled by the payment of $4,500 by the petitioner to RobertSwede. On or about November 20, 1950 Fred Purdue prepared a fictitious purchase invoice for $18,767.40 purporting to represent the purchase of materials by The Swede Company, Inc. from one George Renard. When a check for this amount was drawn *138 by Frances Norbell, the bookkeeper, it was deposited by Purdue in the Bank of America in an account under the name of George Renard, which account had been previously opened by Purdue by making a small deposit. The amount of the fictitious invoice was charged to purchases on the corporate books. Purdue then withdrew this amount from the Renard account over a six-month period. In May 1952 the petitioner discovered Fred Purdue's prior criminal record, which included the following felony convictions: auto theft in 1927; robbery, 1929 and the possession and passing of counterfeit money, 1932 or 1933. For the first two convictions he received sentences of one year and three years, respectively, and for the counterfeiting conviction he received a six year sentence at Leavenworth. In 1940 he was returned to prison until 1942 for a parole violation. The petitioner, upon making this discovery, engaged a certified public accountant to audit the books of the corporation. The accountant started the audit on July 7, 1952 and withdrew from the job on July 9, 1952. On June 25, 1952 Purdue wrote a letter to the petitioner announcing his intention to mail a certain report concerning the activities *139 of The Swede Company, Inc. to the Treasury Department and to the Department of Justice. On July 10, 1952 the petitioner and Purdue executed a "General Release" which stated in part, as follows: "In consideration of the sum of EIGHTEEN THOUSAND DOLLARS ($18,000.00) (less $1,200.00, being the balance due on a promissory note of $2,850.00) paid by B. E. SWEDE to FRED PURDUE, receipt of which is hereby acknowledged, for past services and as compensation for his sudden discharge from SWEDE'S employment, each hereby RELEASES and FOREVER DISCHARGES the other from all debts, claims, demands, actions and causes of action, including such as have arisen by reason of, or in any manner have grown out of the employment of PURDUE by SWEDE during the past eight (8) years. "SWEDE agrees to cancel forthwith and return to PURDUE said promissory note signed by PURDUE in the amount of $2,850.00, and PURDUE agrees forthwith to return to SWEDE all books and records belonging to SWEDE now in his possession, together with all work papers, memoranda, correspondence, cancelled checks, bank statements, notes, etc., relating thereto." The total net income reported by petitioner and his wife, Grace, in the *140 years 1939 through 1952 is as follows: Year
Amount
1939
$ 7,113.15
1940
11,123.40
1941
9,319.00
1942
14,188.65
1943
15,254.44
1944
14,684.70
1945
29,863.35
1946
31,350.40
1947
34,780.31
1948
21,715.68
1949
20,726.30
1950
38,151.59
1951
29,057.02
1952
26,861.85
The net income reported by The Swede Company, Inc. for each of the fiscal years ending November 30, 1939 through November 30, 1952 is as follows: Year
Amount
1939
$12,551.72
1940
17,584.31
1941
11,786.74
1942
12,798.86
1943
20,870.40
1944
11,495.52
1945
21,265.65
1946
25,949.84
1947
25,732.78
1948
12,105.72
1949
25,865.66
1950
41,101.46
1951
22,215.52
1952
35,911.20
It was stipulated that the petitioner and his wife, Grace, had at least the following assets, liabilities and nondeductible expenditures: 12/31/43
1944
1945
1946
Total Assets
$ 92,183.04
$ 96,669.53
$292,316.05
$269,632.77
Total Liabilities
17,526.26
19,424.14
165,643.06
68,489.22
Net Worth End of
74,656.78
77,245.39
126,672.99
201,143.55
Year *
Net Worth
74,656.78
77,245.39
126,672.99
Beginning of Year
*
Increase * in Net
2,588.61
49,427.60
74,470.56
Worth
Plus
13,073.13
11,745.94
13,999.94
23,459.20
Non-Deductible
Expenditures
Correct * Net
14,334.55
63,427.54
97,929.76
Income
Reported Net
14,684.70
29,863.35
31,350.40
Income
Unreported * Net
$ 33,564.19
$ 66,579.36
Income
*141 1947
1948
1949
1950
1951
Total Assets
$297,732.92
$322,457.63
$353,016.25
$475,697.99
$478,591.40
Total Liabilities
42,609.68
62,021.38
77,539.74
178,888.30
174,637.75
Net Worth End of
255,123.24
260,436.25
275,476.51
296,809.69
303,953.65
Year *
Net Worth
201,143.55
255,123.24
260,436.25
275,476.51
296,809.69
Beginning of Year
*
Increase * in Net
53,979.69
5,313.01
15,040.26
21,333.18
7,143.96
Worth
Plus
24,533.00
14,889.00
11,972.62
11,863.29
23,597.25
Non-Deductible
Expenditures
Correct * Net
78,512.69
20,202.01
27,012.88
33,196.47
30,741.21
Income
Reported Net
34,780.31
21,715.68
20,726.30
38,151.59
29,057.02
Income
Unreported * Net
$ 43,732.38
$ 6,286.58
$ 1,684.19
Income
Respondent computed unreported income for the petitioner and his wife for the years 1939 through 1952 in three segments. The first segment covered the years 1939 through 1943. Respondent *142 computed petitioner's opening net worth as of January 1, 1939 in the amount of $5,664, and as a closing net worth on December 31, 1943 the respondent used the stipulated net worth in the amount of $74,656.78, resulting in an increase in net worth over the five year period in the amount of $68,992.78. To this figure the respondent added nondeductible expenditures over the five year period in the amount of $27,828.46, resulting in a computed total net income for this period in the amount of $96,821.24. Since the total net income reported by petitioner and his wife over this period was $56,998.64, the unreported net income for the five year period appears as $39,822.60. This amount was then allocated to each of the years 1939 through 1943 by determining the percentage that the reported income for each year bears to the total reported income for the five year period, as follows: Unreported
Income
Exclu-
Amount
Corrected
sive of
Specific
Total Unre-
Specific
Year
Reported
Percentage
Net Income
Adjustments
Adjustments
ported Income
1939
$ 7,113.15
12.60
$12,199.48
$ 5,086.33
0
$ 5,086.33
1940
10,575.84 [3]
18.74
18,144.30
7,568.46
0
7,568.46
1941
9,319.00
16.51
15,985.19
6,666.19
0
6,666.19
1942
14,188.65
25.13
24,331.17
10,142.52
$1,250.00 *
11,392.52
1943
15,254.44
27.02
26,161.10
10,906.66
2,200.00
13,106.66
$ 56,451.08
100.00
$96,821.24
$40,370.16
$3,450.00
$ 43,820.16
*143 The second segment of the respondent's computation covers the years 1944 through 1951. For these years the respondent computed unreported net income for the petitioner and his wife by using the net worth plus nondeductible expenditures method. The respondent used the stipulated assets, liabilities and nondeductible expenditures, with some additions. In 1945 the respondent included $40,000 as an additional amount of 2 1/2 per cent Treasury bonds in the assets, as well as $25,000 representing an additional investment by petitioner in the stock of The Swede Company, Inc. For the same year, the respondent also increased liabilities by $10,000. Respondent's computation for the years 1944 through 1951 is as follows: 12/31/43
12/31/44
12/31/45
12/31/46
Total Assets "as
$ 92,183.04
$ 96,669.53
$292,316.05
$296,632.77
stipulated"
Add: Additional
40,000.00
40,000.00
Government Bond
Purchase
Additional
25,000.00
25,000.00
Capital Stock -
Swede Co.
Total Proven
$ 92,183.04
$ 96,669.53
$357,316.05
$334,632.77
Assets
Total Liabilities
$ 17,526.26
$ 19,424.14
$165,643.06
$ 68,489.22
"as stipulated"
Add: Amount due
Max Swede on
purchase of
Swede Co. stock
10,000.00
Total Proven
$ 17,526.26
$ 19,424.14
$175,643.06
$ 68,489.22
Liabilities
Net Worth - End
$ 74,656.78
$ 77,245.39
$181,672.99
$266,143.55
of Year
Net Worth -
74,656.78
77,245.39
181,672.99
Beginning of Year
Increase in Net
$ 2,588.61
$104,427.60
$ 84,470.56
Worth
Add: Total
Non-Deductible
Expenditures -
"as
stipulated"
11,745.94
13,999.94
23,459.20
NET INCOME
$ 14,334.55
$118,427.54
$107,929.76
CORRECTED
Reported Income
14,703.76
29,863.35
31,350.40
Unreported Income
per Net Worth,
exclusive of
Specific
$ (369.21)
$ 88,564.19
$ 76,579.36
Adjustments
Add: Specific
Adjustments
A. Excess salary
from Swede Co. to
Grace
Swede
2,450.00
2,450.00
1,500.00
B. Dividends from
750.00
Swede Company
C. Profit from
sale of partial
distribution
D. Partnership
income
E. Contributions
TOTAL UNREPORTED
$ 2,080.79
$ 91,014.19
$ 78,829.36
INCOME
*
*144 12/31/47
12/31/48
12/31/49
12/31/50
12/31/51
Total Assets "as
$297,732.92
$322,457.63
$353,016.25
$475,697.99
$478,591.40
stipulated"
Add: Additional
40,000.00
40,000.00
40,000.00
40,000.00
40,000.00
Government Bond
Purchase
Additional
25,000.00
25,000.00
25,000.00
25,000.00
25,000.00
Capital Stock -
Swede Co.
Total Proven
$362,732.92
$387,457.63
$418,016.25
$540,697.99
$543,591.40
Assets
Total Liabilities
$ 42,609.68
$ 62,021.38
$ 77,539.74
$178,888.30
$174,637.75
"as stipulated"
Add: Amount due
Max Swede on
purchase of
Swede Co. stock
Total Proven
$ 42,609.68
$ 62,021.38
$ 77,539.74
$178,888.30
$174,637.75
Liabilities
Net Worth - End
$320,123.24
$325,436.25
$340,476.51
$361,809.69
$368,953.65
of Year
Net Worth -
266,143.55
320,123.24
325,436.25
340,476.51
361,809.69
Beginning of Year
Increase in Net
$ 53,979.69
$ 5,313.01
$ 15,040.26
$ 21,333.18
$ 7,143.96
Worth
Add: Total
Non-Deductible
Expenditures -
"as
stipulated"
24,533.00
14,889.00
11,972.62
11,863.29
23,597.25
NET INCOME
$ 78,512.69
$ 20,202.01
$ 27,012.88
$ 33,196.47
$ 30,741.21
CORRECTED
Reported Income
34,780.31
21,715.68
20,726.30
38,151.59
29,057.02
Unreported Income
per Net Worth,
exclusive of
Specific
$ 43,732.38
$ 6,286.58
$ 1,684.19
Adjustments
Add: Specific
Adjustments
A. Excess salary
from Swede Co. to
Grace
Swede
1,350.00
B. Dividends from
Swede Company
C. Profit from
189.99
sale of partial
distribution
D. Partnership
119.91
income
E. Contributions
200.00
TOTAL UNREPORTED
$ 45,592.28
0
$ 6,286.58
0
$ 1,684.19
INCOME
*145 In the third segment, which covers the year 1952, the respondent made two specific adjustments in the income of Benjamin E. and Grace Swede. Respondent included in the gross income for that year the amount of $13,802.78, representing purported constructive dividends received from The Swede Company, Inc. which were not reported. Respondent also included in gross income an additional amount of interest received in that year and not reported in the amount of $1,000. Respondent also computed unreported income for The Swede Company, Inc. for the fiscal years ending November 30, 1939 through November 30, 1952. In each of the years, with the exception of 1944, 1948, 1950 and 1952, the respondent treated some or all of the unreported income of Benjamin E. Swede and his wife as the unreported income of The Swede Company, Inc. The amounts so treated were as follows: Fiscal Year End-
ing November 30
Amount
1939
$ 5,086.33
1940
7,568.46
1941
6,666.19
1942
10,142.52
1943
10,906.66
1945
74,652.56 *
1946
61,610.09 *
1947
43,732.38
1949
6,286.58
1951
1,684.19
*146 In addition, the respondent made specific adjustment to the income of The Swede Company, Inc. over this period. We outline here the adjustments as revised by the respondent on brief. Respondent disallowed as unreasonable a portion of the deductions for salaries paid to Grace Swede in the fiscal years ending November 30, 1943 through November 1952 in the amounts of $1,900, $4,900, $4,900, $3,000, $2,700, $2,950, $2,700, $2,700, $2,700 and $2,700, respectively. Respondent also disallowed deductions for officers' salaries in each of the fiscal years 1942 and 1943 in the amount of $5,000, and in each of the fiscal years 1945 and 1946 he disallowed a deduction for salaries in the amounts of $15,288.46 and $15,288.36. In the fiscal year 1944 respondent disallowed $8,495.37 which had been claimed as deductions for salesmen's commissions. In the fiscal year 1945 the respondent disallowed a deduction of $312.50 for capital stock tax. In each of the fiscal years 1946 through 1952 the respondent disallowed as excessive a portion of the depreciation deduction claimed on delivery equipment in the respective amounts of $404.88, $651.98, $821.87, $990.49, $1,373, $2,997.02 and $1,045. In the fiscal *147 year 1951 the respondent disallowed $10,271.71 claimed as a deduction for depreciation of leasehold improvements. In the fiscal year 1952 the respondent disallowed a deduction claimed for depreciation on leasehold improvements in the amount of $2,333.26. Respondent included in the gross income of The Swede Company, Inc. for the fiscal years 1951 and 1952 the respective amounts of $22,977.63 and $16,299.61, representing the net income of Little Princess of California for the fiscal years ending September 30, 1951 and 1952, respectively. Respondent disallowed as an ordinary and necessary expense the deduction of $19,400 claimed by The Swede Company, Inc. in the fiscal year 1952 as legal and accounting expenses. Respondent disallowed as unreasonable the amount of $7,066.92 claimed in the fiscal year 1952 by The Swede Company, Inc. as an entertainment expense and $6,645.86 as a travel expense. Respondent disallowed a deduction of $7,080.81 claimed by The Swede Company, Inc. in the fiscal year 1952 for bonuses paid to John Fulmer and Robert Swede. Respondent also disallowed amounts claimed by The Swede Company, Inc. as deductions in the fiscal year 1952 for shipping department supplies, *148 $2,000; contributions, $314.46, and taxes, $90. The total increases in the income of The Swede Company, Inc., computed by the respondent by combining the amounts of the petitioner's unreported income attributable by the respondent to the corporation with the specific disallowances, are as follows: Fiscal Year End-
ing November 30
Amount
1939
$ 5,086.33
1940
7,568.46
1941
6,666.19
1942
15,142.52
1943
17,806.66
1944
13,395.37
1945
95,153.02
1946
80,303.31
1947
47,084.36
1948
3,771.87
1949
9,977.07
1950
4,073.00
1951
40,630.55
1952
20,826.22
The returns filed by The Swede Company, Inc. for the fiscal years 1939 through 1948, and the returns filed by Benjamin E. Swede for the years 1939 through 1947 and by Ben and his wife for 1948 were not false or fraudulent returns with intent to evade tax. No part of the deficiencies in each of the years 1949, 1951 and 1952 in Docket Nos. 49968 and 54778 (Benjamin E. and Grace Swede), and no part of the deficiencies for each of the fiscal years 1949 through 1951 in Docket Nos. 49969, 52854 and 54821 (The Swede Company, Inc.) is due to fraud with intent to evade tax. Opinion It has been stipulated *149 that the years 1949 through 1952 in the dockets involving petitioner and his wife, and the fiscal years 1949 through 1952 for The Swede Company, Inc. are not barred by the statute of limitations. The remaining years 1939 through 1948 are barred by section 275(a) unless it is found that the returns filed by the parties for each of those years were false or fraudulent returns with intent to evade tax. Section 276(a). Respondent has the burden of proving fraud and he must establish fraud by clear and convincing evidence. Arlette Coat Co., 14 T.C. 751. This means that on the statute of limitations question, which we will take up first, respondent has the burden of establishing by clear and convincing evidence that the returns filed by Ben Swede and The Swede Company, Inc. for the years 1939 through 1948 were false or fraudulent returns with intent to evade tax. We have examined the entire record with care and we find it insufficient to establish fraud by the necessary quantum of proof. We do not think it necessary to make a detailed discussion of the evidence but we will make a *150 few brief comments with respect to the items relied upon by respondent to establish fraud. On brief the respondent relies upon the following items to prove fraud: (1) noon-hour cash sales, (2) kickbacks of salesmen's commissions, (3) RobertSwede's bond program, (4) George Renard transaction, (5) termination pay to Fred Purdue, (6) reimbursement to Ben Swede of employees' personal expenses, (7) Maxwell Swede employment contract, (8) Gallant-Swede division of profits and (9) substantial understatements of income. Several of the purported indicia of fraud emphasized in the respondent's discussion apply only to the years prior to 1949; some run through all of the years 1939 through 1952 and some apply only to the years 1949 through 1952. We will discuss the last item, or the substantial understatement of income, first. Respondent computed the understatements of income for all of the years 1939 through 1951 by use of the net worth plus nondeductible expenditures method, which was based in part on stipulated amounts of assets, liabilities and expenditures for the years 1943 through 1951. Respondent admits the net worth computation shows no great discrepancy between income computed and *151 income reported for the years prior to 1945 and subsequent to 1947. The net worth computation used by respondent was the net worth computation of Ben Swede. It was respondent's theory that the omitted income of Ben Swede, as reflected by the net worth computation, all originated from and was income of The Swede Company, Inc. except in 1945 and 1946 when the Gallant-Swede partnership was operating and part of Ben Swede's omitted income as reflected by the net worth computation could have come from that source. The first segment of the net worth statement is for the years 1939 to 1943. As pointed out in our findings of fact, respondent merely found an opening net worth for January 1, 1939, and a higher net worth for December 31, 1943. He then allocated the total increase for the five year period to each of the years, using a percentage figure based upon the reported income for each year. This is much like what was done in W. A. Shaw, 27 T.C. 561, affd. 252 F. 2d 681. There, as here, respondent's net worth computation consisted of opening figures for assets and closing figures for said assets several years later and an attempt to fill in details for the *152 intervening years by a purely mathematical approach. We held this insufficient to sustain respondent's burden of proof on the fraud issue, saying: "The increase in these assets may have occurred entirely in one year and the fraud might have been consummated solely in that year. * * * Where the issue is fraud, we cannot assume that such fraud occurred in each of the years in issue rather than solely in one." We do not think that the understatements computed in this fashion in the present case are sufficient to indicate fraud. Respondent computed petitioner's understatements of income for the years 1944 to 1951 by the net worth method. It fairly appears from the statements of counsel for the parties that a proposed stipulation prepared by respondent that would establish the correctness of this net worth computation, attached as the only exhibit to the proposed stipulation, was objected to by petitioner. However, at the commencement of the trial the parties submitted the stipulation which each signed with the understanding that during the course of the trial an additional stipulation which *153 counsel stated was not then "typed up", but which would relate to the net worth portion of the stipulation, would be filed. Some seven days later just before respondent rested, counsel for the parties stated to the Court that they were amending the stipulation with respect to the net worth provisions and substituting a new exhibit for the net worth computation. The stipulation which is now before us provides in its last paragraph: "Attached as Exhibit 1-A is a schedule setting forth assets, liabilities, and expenses of Benjamin and Grace Swede as of the dates indicated." The said Exhibit 1-A consists of three sheets listing items of assets, liabilities and nondeductible expenditures of Ben Swede during the years 1943 to 1951, inclusive. By footnotes on the exhibit and statements into the record by counsel it was agreed neither party was to be precluded from introducing additional evidence as to the items. We think the record with respect to the stipulation justifies the statements made in petitioner's brief: The only stipulation that was entered into was certain individual items which could be established by evidence as to those individual items, but there was no stipulation *154 as to any calculation or any inferences from those items or as to any fact regarding it. * * *
There was no stipulation as to Petitioners' net worth or to any items that could compile a net worth statement. There were individual items stipulated to, such as bank deposit, ownerships of stocks or bonds and other items to which the government sought a stipulation as to those things. That stipulation was not all-inclusive. It was not stipulated that these were the only items or all of the items owned by the Petitioners nor was it stipulated that these comprise a net worth statement. * * * One more thing should be said about the net worth feature of this case. Respondent originally used an opening net worth of Ben Swede of $5,000. After trial he changed this item to $10,000 based on Robert Swede's testimony to the effect that Ben had no more than that sum when he came to California. The revenue agents testified Ben at all times said he had $60,000 when he came to California and Ben said the same thing on the witness stand. As pointed out in our statement of facts, a net worth computation for the years 1944 to 1951, based upon the items stipulated and the additions thereto made *155 by respondent, shows Ben overstated his income in the year 1948 and made but a nominal understatement in 1944. The same computation shows understatements of income in the years 1945, 1946 and 1947 in the amounts of $91,014.19, $78,829.36 and $45,592.28. Omitting respondent's additions to the items and using the stipulated items as a net worth statement it would show understatements of income in the years 1945, 1946 and 1947 in the amounts of $33,564.19, $66,579.36 and $43,732.38, respectively. It has often been held that evidence of repeated understatements of large amounts of income, as shown by comparing income returned with income shown by an established net worth computation, constitutes evidence from which fraud may be inferred. However, under the record here, especially with respect to the net worth computation utilized by respondent to show the understatements, we feel the evidence of understatements in the years 1944 to 1951 is something less than clear and convincing. The other items relied upon by respondent to prove fraud during the years 1939 through 1948, with the exception of kickbacks of salesmen's commissions, all depend upon the testimony of Fred Purdue and Robert *156 Swede. Purdue is an admitted ex-convict, perjurer, income tax falsifier, thief, counterfeiter, gambler, parole violator and embezzler. This is not the case of a taxpayer associating himself with or employing a known character of low reputation. Purdue first came to petitioner in 1944 as a field man from a reputable C.P.A. firm and was hired by petitioner as the company auditor. It wad not until 1952 that petitioner learned of his bas reputation and immediately he took steps to fire him - steps that led to Purdue's stealing of books and records, and an ultimate payment by petitioner to Purdue to get them returned. Certainly any testimony such a character would give that would implicate petitioner in his nefarious schemes would demand such corroboration before it would carry much weight. There is no corroboration of his testimony by non-conspirators or any documentary evidence that implicates petitioner in the conspiracy to falsify the books and split up unrecorded income. To be sure, Purdue is corroborated by RobertSwede but it is admitted he was a co-conspirator with Purdue, a falsifier of his own income tax returns, and a man, so other disinterested witnesses stated, who had *157 a bad reputation for truth. He had had litigation with petitioner and his demeanor on the witness stand displayed his animosity toward his more successful brother. It is true that the evidence of Purdue and Robert Swede shows items of unreported income of Ben Swede's corporation. But it is also consistent with Ben Swede being the victim of dishonest and disgruntled employees unless we are to believe their uncorroborated statements that Ben was a co-conspirator. Besides, their testimony implicating Ben as a member of their conspiracies was contradicted by the testimony not only of Ben but of other employees of The Swede Company, Inc. and other disinterested witnesses. The remaining item of kickbacks to salesmen of commissions, consists of the contention by respondent that a salesman for The Swede Company, Inc. named Fitzpatrick, gave part of the sums paid to him by the corporation as expenses or commissions, back to Ben Swede. The record shows Fitzpatrick was too ill to testify. He had made an affidavit (admitted without objection) that he made no kickbacks to Ben Swede. Upon examination of the whole record we are not persuaded that respondent has met his burden of showing fraud. *158 We hold that the returns filed by Benjamin Swede in the years 1939 through 1948 and by The Swede Company, Inc. in the fiscal years ending November 30, 1939 through 1948 were not false or fraudulent with intent to evade tax. The parties stipulated certain assets, liabilities and expenditures of the petitioner and his wife for the years 1949 through 1951. Respondent's net worth computation based on these stipulated amounts shows unreported income for the years 1949 and 1951 in the amounts of $6,286.58 and $1,684.19, respectively. There can be no dispute over the correctness of these amounts and they are properly includible in the income of petitioner and his wife for those years. Respondent included $1,000 in petitioner's gross income for 1952 representing additional interest on Treasury bonds. There is no evidence on this issue to overcome the presumption of correctness of respondent's determination and we, therefore, sustain the respondent. Respondent included in petitioner's gross income for 1952 the amount of $13,802.78, with the explanation in the notice of deficiency that this amount represented "constructive dividends determined to have been received by you * * * from The *159 Swede Company, Inc. * * *". On brief, the respondent asserts that certain "expenses were disallowed to the corporation and were considered personal expenses of Ben Swede; the payment for him by the Swede Company is considered a constructive dividend." In his answer, respondent states the constructive dividends consisted of the following sums paid to or for Benjamin E. Swede by The Swede Company, Inc.: Expenditures for personal entertainment
$ 7,066.92
Personal travel expense
6,645.86
Personal taxes paid
90.00
Total
$13,802.78
It is to be observed that respondent, in his adjustments of The Swede Company, Inc. income, disallowed $7,066.92 out of a total of $9,566.92 and $6,645.86 out of a total of $8,645.86 claimed by The Swede Company, Inc. in the fiscal year 1952 as deductions for entertainment and travel expenses, respectively. No vouchers or other records were offered to substantiate the amounts disallowed in the corporate returns and added to Ben's income as a constructive dividend. We have only the testimony of Ben that entertainment was carried on, that the business of the corporation required trips to New York and Chicago and other places, and that *160 the amounts deducted were reasonable. Respondent's determination is presumptively correct. We hold for respondent on the issue and our holding will dispose of the like issue in respondent's favor with respect to the disallowance of the same sums in the corporate returns for said year. No evidence at all was introduced with respect to the corporation paying Ben Swede's personal taxes in the amount of $90. We hold for respondent on this issue. The Swede Company, Inc. claimed a deduction for compensation paid to Grace Swede, as secretary-treasurer, in each of the fiscal years ending November 30, 1949 through 1952 in the amount of $3,000. Respondent disallowed $2,700 of this amount in each of the fiscal years as excessive. Grace was a full time bookkeeper during the early years of the business and she testified that she attended corporate meetings, signed checks, trained new office personnel, did designing work and outside shopping for new styles, and went on occasional trips with petitioner during which she helped to check styles and fashions. While the evidence is meager and not too explicit, *161 we think it is sufficient to meet the burden of proof that the compensation paid in each of these years was reasonable, and we so hold. Respondent disallowed, as excessive certain deductions claimed by The Swede Company, Inc. for depreciation on delivery equipment in each of the fiscal years ending November 30, 1949 through 1952. The amounts disallowed in the respective years were $990.49, $1,373, $2,997.02 and $1,045. There is no evidence on this issue apart from some categorical statements by Benjamin E. Swede and by a witness that the disallowances were improper. Nothing else appears in the record. We sustain the respondent on this issue. Respondent disallowed a deduction claimed by The Swede Company, Inc. in the fiscal year 1951 for depreciation on a leasehold improvement in the amount of $10,271.71. The premises of The Swede Company, Inc. were extensively remodeled in 1951, the year in which the corporation's current lease was to expire. The cost of the remodeling appears on the corporation's return for the fiscal year 1951 as $11,913.14 and, without explanation, the amount of $10,271.71 is claimed as a deduction. Ben testified that the remodeling was done only after he had *162 been assured by the owner of the building that there would be no future increase in rent. His testimony was that "we were given to understand that we would not get an increase, so we proceeded to stay" and he further testified that "Then we remodeled * * *." Ben testified that the corporation's "lease expired at the end of the year 1951 and property write-offs were taking place. That is all I know about the technical part of it." The corporation's accountant merely testified that the disallowance was improper. It is obvious that the corporation's deduction of this entire amount for remodeling in the fiscal year 1951 was erroneous. Respondent argues that the improvements should be depreciated over the term of the lease as renewed. On the basis of this record, we sustain the respondent. Respondent disallowed $2,333.26 out of a deduction claimed in the fiscal year 1952 by The Swede Company, Inc. for depreciation on leasehold improvements in the amount of $3,372.09. It was respondent's position that part of the sum capitalized represented improvements on Ben's home and the depreciation due to this portion was disallowed. Ben admitted the work done on his residence but denied that it *163 was done with the corporation's money. No other evidence was presented, such as invoices or statements of work done, or any testimony by the carpenter who did the work on the home and leasehold and who was undoubtedly in a position to know the true facts. We do not believe that The Swede Company, Inc. has met its burden of proof on this issue, and we sustain the respondent. For the fiscal years 1951 and 1952 the respondent included in the gross income of The Swede Company, Inc. the income of Little Princess, a corporation wholly owned by Ben. The amounts so included in The Swede Company, Inc. income were $22,977.63 for the fiscal year 1951 and $16,299.61 for the fiscal year 1952. The explanation given by the respondent in the notice of deficiency to The Swede Company, Inc. was that "It is determined that income reported by Little Princess of California constitutes taxable income to you." Section 45 authorizes the Commissioner to allocate income of two or more businesses owned or controlled by the same interests when he determines that such allocation is necessary in order to prevent "evasion *164 of taxes or clearly to reflect the income of any of such * * * businesses." The record here shows quite clearly that Little Princess was a separate corporation, organized in 1945 by Ben Swede, RobertSwede and Otis Gallant, owning 30 shares each, and Edwin Gallant owning 10 shares. It was engaged in the manufacture and jobbing of children's wear. Later Ben bought the stock of Robert and the two Gallants and after June 1947 he was the owner of all the stock. The business was in charge of William Brady and it is admitted Little Princess made separate sales, kept separate books, filed separate income tax returns, and paid the taxes shown to be due thereon. Its place of business was adjacent to The Swede Company, Inc. premises and it did use some of the latter corporation's facilities for which it paid a facility charge. Also there was some proration of expenses between the two corporations based on sales by each. We think petitioner met his burden of proof on the issue. Virginia Metal Products, Inc., 33 T.C. 788. Respondent disallowed a deduction claimed by The Swede Company, Inc. in the fiscal year 1952 as legal and accounting expenses in the amount of $19,400. There *165 is evidence that $18,000 of this amount was paid to Fred Purdue and no evidence at all as to the balance of $1,400. A "General Release" executed by Ben and Fred Purdue shows that an essential condition of this payment was that Purdue agreed to return certain corporate books and records, work papers, correspondence, canceled checks and bank statements which Purdue had taken during his employment with The Swede Company, Inc.Section 23(a)(1)(A) of the Internal Revenue Code of 1939 allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a taxpayer's trade or business. It is, of course, necessary that such expense must be related to the taxpayer's business. Deputy v. DuPont, 308 U.S. 488. An analysis of the evidence does not support the contention that the payment was an ordinary and necessary expense of the corporation's business. In the petition it was alleged with respect to this item that the $19,400 represented "amounts paid by Mr. Benjamin Swede to Mr. Fred Purdue for legal and accounting expense." On brief, petitioner *166 merely states the money was paid to Purdue as termination pay. The record suggests the corporation payment was to Ben, the sole stockholder. We do not accept as true the bare statement that this payment was severance pay due by the corporation to Purdue. There are indications in the record that Ben paid this money to Purdue for the return of certain papers which might be incriminating to him. Just prior to this transaction, Purdue had mailed a letter to Ben in which Purdue mentioned his possession of these papers and threatened to use them. We cannot find that The Swede Company, Inc. sustained its burden of showing the transaction was related to the corporation's business or that the payment was an ordinary and necessary expense of the corporation within the meaning of section 23(a)(1)(A). We sustain the respondent on this issue. Respondent disallowed a deduction of $7,080.81 claimed by The Swede Company, Inc. in the fiscal year 1952 for purported bonuses to John Fulmer and Robert Swede. Respondent's explanation in the notice of deficiency was that the "bonuses are not shown to be authorized and are shown by your records as advances to said employees." At the trial the revenue agent *167 testified that the bonuses had not been paid at the end of the fiscal year 1952 and that this was the main reason for the disallowance. We have found as a fact that a bonus plan did exist from 1949 and that the percentages of net profits allotted to the participants varied over the years. The Swede Company, Inc. was on an accrual basis and with the bonus system established by the evidence, we think it was proper for the corporation to accrue the amount of bonuses payable at the end of the fiscal year. Respondent erred in his disallowance of this item. Respondent also disallowed deductions claimed by The Swede Company, Inc. in the fiscal year 1952 for office supplies in the amount of $2,000; for contributions in the amount of $314.46 and for taxes in the amount of $90. The revenue agent explained the $2,000 disallowance as "based upon the fact that it was an arbitrary write-off of inventory supplies that had been carried on the books for quite a long time and which the representatives of [Ben Swede] * * * had said that they had merely written off and charged it to operations without an inventory." We have been shown no evidence as to these three items which would meet the corporation's *168 burden of proof to show that the disallowances by the respondent were in error. With the record in this condition, we must sustained the respondent. At the trial and on brief there is an argument that the corporation was somehow entitled to an adjustment in its income of about $81,000 over the years before us. We have attempted to follow the testimony of Roy Adair who performed an audit on the corporation's books in 1952 while in the employ of a certified public accountant. Adair himself was neither a certified public accountant nor a public accountant. If we understand his testimony correctly, it is that over the period 1948 through 1951 certain amounts were omitted, evidently by Fred Purdue, from accounts payable and this caused an excess in earned surplus of about $81,000 for this period, and that a portion of this should be carried forward as a loss to the fiscal year 1952. As for the loss to be carried forward to the fiscal year 1952, it has never been placed in issue and would, therefore, not be before us. It is admitted, even by Adair, that these purported omissions "had no relation to cost of goods sold." This lack of effect on cost of goods sold is also demonstrated by a *169 witness for the respondent by means of a series of exhibits. Nor could these omissions have any effect on the amounts reported as sales over this period. It escapes us, therefore, how this adjustment, which is far from established either by Adair's obscure and unsubstantiated testimony or by any other evidence in the record, could have any effect on the income of The Swede Company, Inc. over this period. It is also significant that Adair's superiors never filed any claims for refund for the years in which the purported overstatements of profit took place. We hold as to this issue that the record before us does not establish that the corporation is entitled to any adjustments to its income over the years 1949 through 1951, or that it is entitled to a loss carry forward to the fiscal year 1952. Respondent claims that a part of the deficiency in each of the years 1949, 1951 and 1952 in Docket Nos. 49968 and 54778 (Benjamin E. and Grace Swede) and a part of the deficiency for each of the fiscal years 1949 through 1951 in Docket Nos. 49969, 52854 and 54821 (The Swede Company, Inc.) is due to fraud with intent to evade tax within the meaning of section 293(b). Respondent, in his argument *170 under section 293(b), discusses all the parties together and we shall do the same. Respondent has the burden of proving fraud and he must do so by clear and convincing evidence. Arlette Coat Co., supra. Our discussion of the fraud issue under section 276(a) in the earlier part of this opinion is equally applicable here. If anything, the evidence of fraud over the years 1949 through 1952 is even less persuasive than for the prior years. The understatements of income for Ben and his wife in the years 1949 and 1951 are in the respective amounts of $6,286.58 and $1,684.19, based upon stipulated amounts of assets, liabilities, and expenditures. The same stipulated amounts of assets, liabilities and expenditures, used in respondent's net worth computation show an overstatement for the year 1950 in the sum of approximately $5,000. Their understatement of income for 1952, as well as the corporation's understatements for the fiscal year 1949 through 1951, were for the most part established only through the failure by Ben and the corporation to sustain their burden of overcoming the presumptive correctness or respondents' determinations. Understatements established in this *171 manner are not proof of fraud. Holland v. United States, 348 U.S. 121; John Marinzulich, supra. We have analyzed the evidence at length, the nature of the witnesses giving the testimony, the contradictions, and the ambiguous nature of some of the transactions which the respondent points to as indications of fraud, and we do not find that the evidence of fraud for these years is clear and convincing. At most, there may be suspicions of fraud, but that is not enough. L. Glenn Switzer, 20 T.C. 759. We hold that no part of the deficiencies for the years 1949 through 1952 was due to fraud with intent to evade tax. Respondent determined additions to tax in Docket No. 52854 (The Swede Company, Inc.) under section 291(a) for the fiscal year 1950, and in Docket No. 54778 (Benjamin E. and Grace Swede), the respondent determined additions to tax under section 294(d)(2) for the years 1951 and 1952. Respondent concedes that there are no additions to tax in Docket No. 52997 (Benjamin E. and Grace Swede) for the year 1950. There is no evidence presented on these issues either by the petitioner or by the corporation. Respondent is sustained. Decisions will be entered *172 under Rule 50. Footnotes
1. The following proceedings are consolidated herewith: The Swede Company, Inc., Docket Nos. 49969, 52854 and 54821; Benjamin Swede and Grace J. Swede, Husband and Wife, Docket No. 52997; Benjamin E. Swede and Grace J. Swede, Husband and Wife, Docket No. 54778 and Benjamin E. Swede, Docket No. 54779.↩
2. All section references are to the Internal Revenue Code of 1939, as amended.↩
*. This is an addition to tax under Sec. 291(a). ↩
*. The only amounts stipulated were the assets, liabilities and expenditures of which the totals appear here. The computation of increases in net worth, as well as the unreported income, is based on the stipulated figures.↩
3. There appears to be a mistake in this amount. The return for 1940 shows a net income figure of $11,123.40.↩
*. Exclusive of medical expense adjustment. ↩
*. Exclusive of medical expense adjustment.↩
*. Respondent determined that in 1945 and 1946 a portion of the petitioner's unreported income came from the Gallant-Swede partnership, in the respective amounts of $13,911.63 and $14,969.27, and to that extent decreased the amounts of unreported income, as computed in the respondent's net worth statement for the petitioner, which respondent attributed to The Swede Company, Inc.↩