W. A. SHAW AND GRACE SHAW, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44932. Filed December 21, 1956.

*John J. Hooker, Esq., K. Harlan Dodson, Jr., Esq.,* and *Sewell R. Creel, C. P. A.,* for the petitioners.
*J. Elton Mitchiner, Esq.,* for the respondent.

---

[1] Although the deficiency notice was addressed to both W. A. Shaw and Grace Shaw, it is clear that petitioner Grace Shaw has no liability other than for the year 1949 since she had no separate income during the years 1941 to 1947, inclusive, filed no returns for such years, and filed a return jointly with her husband only for the year 1949.

564

566

OPINION.

FISHER, *Judge:* We must decide whether respondent is correct in his determination of deficiencies in petitioners' income taxes and, further, whether such deficiencies are due to fraud. During the years here in issue petitioner was engaged in a variety of business activities, the principal one of which appears to have been the conduct of a general merchandise store. In addition, he operated several farms, engaged in a mussel fishing business, and had an interest in the operation of a cotton gin. When respondent's agent attempted to audit petitioner's income tax returns, he was informed by petitioner that all books and records were destroyed immediately after each of the returns was prepared. Respondent, accordingly, resorted to the net worth method to determine petitioners' income, and as a result of such computations, he determined that petitioner had understated his income for the years in issue by amounts ranging from 300 per cent to 1,000 per cent.

As this case comes before us, we find that petitioner has agreed to most of the items in respondent's net worth computation. Petitioner attacks the validity of the net worth computation by contending that the amounts of various assets were incorrectly determined, certain liabilities omitted, and that, accordingly, the computation is completely erroneous. Only four categories of items appear to be in dispute. The first two relate to petitioner's conduct of his general merchandise store, namely, the store's inventories at the end of the years 1940 through 1943, and its accounts receivable at the end of the years 1940 through 1945. The remaining two items in issue are the amounts of notes receivable held by petitioner, personally, at the end of the years 1943 through 1949, and whether he owed any notes payable on December 31, 1948, and December 31, 1949. As stated in *Holland* v. *United States*, 348 U. S. 121 (1954):

an essential condition in cases of this type is the establishment, with reasonable certainty, of an opening net worth, to serve as a starting point from which to calculate future increases in the taxpayer's assets. The importance of accuracy in this figure is immediately apparent, as the correctness of the result depends entirely upon the inclusion in this sum of all assets on hand at the outset. * * *

After careful consideration of the record herein, we are convinced that, with respect to the taxable years 1941 to 1944, inclusive, respondent has failed to satisfy this "essential condition."

Since none of the books or records of petitioner's business were available, respondent had a particularly difficult task in computing the amounts of the aforementioned assets held by petitioner on December 31, 1940, the beginning of the net worth period. One of the disputed items, merchandise inventories, was presumably reported by petitioner on each of his returns for the years 1941 through 1944, but unfortunately it appears that respondent no longer had these returns in his possession. The earliest return available to respondent was that for 1945 which reported the opening and closing inventories for that year. As for accounts receivable, they were not required to be reported on Schedule C of a taxpayer's individual return, and the earliest reported amount was that for December 31, 1946, which was reported on the partnership's return for 1946.[3] However, there was some evidence as to the value of the inventory in 1937 and the accounts receivable in 1940, and respondent has attempted to reconstruct the amounts of these disputed assets for the earlier years in issue by assuming that each of these assets increased annually, by an equal amount, from those dates until the dates disclosed by the returns. Thus, respondent has started with evidence as to the inventories existing at December 31, 1937, and December 31, 1945, and the accounts receivable existing at December 31, 1940, and December 31, 1946, and has attempted to fill in the details for the intervening years by adopting a purely mathematical approach. Obviously, this procedure results in estimates which are, at best, crude approximations. If this case involved only deficiencies, and the burden of proof were entirely upon petitioner, we would have to sustain such estimates, for petitioner has done nothing to rebut them. It is obvious that the job must, in some fashion, be done, for a taxpayer cannot be permitted to evade the audit, proper computation, and assessment and collection of taxes by his failure to maintain the records required by law. But the burden of proof rests upon respondent in the instant case since the deficiencies for the years 1941 through 1946 are barred by the statute of limitations if fraud is not proved for such years. It is axiomatic that fraud must be shown by clear and convincing proof. *Arlette Coat Co.*, 14 T. C. 751 (1950); *M. Rea Gano*, 19 B. T. A. 518 (1930). Although our suspicions may be aroused because of petitioner's destruction of his records, by his failure to testify or to introduce evidence regarding any of the controverted items, and by respondent's computation of substantial deficiencies based upon what, at first glance, appears to be a reasonable reconstruction of petitioner's assets for certain vital years, this is not

___

[3] Since the partnership did not acquire any interest in the store's outstanding accounts receivable upon its organization on January 1, 1946, the amount of petitioner's accounts receivable as of that date is not obtainable from the partnership's 1946 return.

sufficient to sustain respondent's burden of proof. Petitioner's failure to overcome the presumptive correctness of the deficiencies extending over a period of years cannot be regarded as, in and of itself, sufficient proof that the deficiencies, or any part thereof, were due to fraud on the part of the taxpayers. *Drieborg* v. *Commissioner*, 225 F. 2d 216 (C. A. 6, 1955). Respondent must affirmatively show that there were deficiencies for the years barred by the statute of limitations, and that such deficiencies were due to fraud. This is not to say that respondent must prove the precise amount of the deficiencies, for that is not part of the burden of proving fraud. But respondent must at least prove that some part of the deficiency for each year in question was due to fraud with intent to evade taxes. If he carries this burden by clear and convincing evidence, and eliminates the bar of the statute of limitations by proof that the returns for such years were false and fraudulent with intent to evade taxes, the correctness of the deficiencies determined by him will be presumed. *Leonard B. Willits*, 36 B. T. A. 294 (1937).

The basic fallacy in respondent's approach to the merchandise inventories and accounts receivable is that there are no grounds for assuming that they increased in the rigid, precise fashion of an arithmetical progression. The increase in these assets may have occurred entirely in one year and the fraud might have been consummated solely in that year. In such a situation, there is no justification for spreading the deficiencies and fraud penalties over a period of years. One of the fundamentals of our income tax system is the annual accounting concept and, although the net worth method of determining an individual's taxable income may result in some slight deviation from this because of the approximations inherent in a net worth computation, there is no authority in the Code for a complete disregard of the principle that each year is a separate taxable unit. Where the issue is fraud, we cannot assume that such fraud occurred in each of the years in issue rather than solely in one.

As the schedule at the end of our Findings of Fact shows, in each of the years 1941 to 1944, inclusive, the aggregate of the disputed inventories and accounts receivable is in excess of the total understatements in issue. Obviously the store had some inventory and some accounts receivable at the end of each of these years. But we are unable to determine whether these assets increased ratably over this 4-year period, or whether the increases occurred prior to, during one, or during several of the years. Although the aggregate annual increase determined by respondent for these two assets is only $4,129.62, the amounts of the understatements for the years 1941 to 1944, inclusive, are not sufficient to assure us that fluctuations in these assets, if known to us, might not show that there were actually no deficiencies for certain of these years. Accordingly, we hold that

respondent has failed to prove the existence of deficiencies, and, therefore, of fraud for any of such years.

Respondent on brief contends, in the alternative, that if we do not accept the inventories which he has determined for the years 1941 to 1944, inclusive, we should use the amount ($12,489.76) which petitioner alleged, in his petition, "could be reasonably expected on December 31, 1940." Respondent, in his answer, denied the allegation, and did not offer it at the trial as an admission. We do not think the language used in the petition may be taken as an admission of a precise amount of inventory as of any of the years in question, or that it is of itself sufficient to supply the clear and convincing evidence which is respondent's burden.

In each of the remaining years in issue, 1945, 1946, 1947, and 1949, we feel that respondent has convincingly shown that at least some part of the deficiency was due to fraud. We will first discuss the deficiencies for each of these years, reserving the discussion of the fraud issue for later in the Opinion. We note at this point, however, that since we have found that part of the deficiencies for each of such years was due to fraud, the burden was upon petitioner to disprove the correctness of such deficiencies.

Turning our attention first to the years 1945 and 1946, the schedule at the end of our Findings of Fact discloses that the understatements shown by the adjusted net worth computation for each of these years is approximately twice the aggregate amount of the disputed items. The disputed items during these years are the accounts receivable and petitioner's notes receivable. Petitioner did not testify or introduce evidence as to either of these items. On the other hand, respondent has proved to our satisfaction that the amounts included by him in the net worth computation with respect to petitioner's notes receivable for the years 1944 to 1949, inclusive, were reasonably correct. Each of the notes included by respondent in his net worth computation was evidenced by actual trust deed records in two counties in which petitioner did business.[4] Although petitioner objects that some of these notes represent duplications of notes also included among the store's accounts and notes receivable, he has made no effort to clarify this matter. However, respondent's agent testified that he had discussed the various notes with petitioner in order to determine which arose from personal loans made by petitioner and which arose from credit furnished to customers at the store. We were impressed with the honesty and directness of this revenue agent's testimony and believe that he made a sincere and thorough effort to accurately determine this item. Even though there may have been

---

[4] These county records indicated no personal notes receivable owned by petitioner during 1940, 1941, 1942, and 1944.

some small inaccuracies, since mortgage records do not conclusively establish the date of payment, we are convinced they are relatively minor and insufficient to radically affect the deficiencies for these years. As for the accounts receivable for these years, although they were determined by respondent by the same mathematical approach used during the previous years, we are convinced that even though there may be some error in the determination of this item, such error would not be sufficient to eliminate the understatements shown by the net worth statement. Thus, the adjusted net worth statement shows an understatement of $16,721.32 for 1945 and $29,399.32 for 1946, and respondent determined an increase in accounts receivable for each of these years amounting to but $1,674.64. In order to eliminate the understatement disclosed by the net worth computation for 1945, petitioner would have to show that his accounts receivable, the only item in issue for that year, had declined by $18,395.96 during that year. As for 1946, accepting the notes receivable as correct (which we do), it would be necessary for petitioner to show that the accounts receivable, the only other disputed item for that year, had declined by still another $31,073.96 in order to eliminate the understatement for that year. Merely to state such hypothetical declines in petitioner's accounts receivable is to show the impossibility of such violent fluctuations in this asset when we consider the volume of sales done by petitioner and the subsequent accounts receivable reported by the partnership. These accounts receivable, as reported on the partnership's returns for 1946 through 1949, amounted to but $12,047.69 on December 31, 1946, and they did not decline or increase by more than $2,500 during any of the succeeding 3 years. We accordingly hold that petitioner has failed to overcome the presumptive correctness of the deficiencies determined for the years 1945 and 1946.

As for the remaining 2 years in issue, 1947 and 1949, here, also, petitioners have failed to overcome the presumptive correctness of respondent's determination. The preceding discussion of the notes receivable for the years 1945 and 1946 is equally appropriate for these last 2 years and need not be repeated.

One more argument regarding the net worth computation must be discussed, namely, petitioner's contention that respondent omitted various notes payable by petitioner, as of December 31, 1948, and December 31, 1949. Respondent's agent testified that he discussed this matter with petitioner prior to preparing the net worth schedule, but the only notes payable which he was shown were drawn after the period in issue. Since petitioner has failed to introduce any evidence as to the nature or amounts of these notes, we must assume that petitioner had no such liability as of these dates and respondent's action on this point is sustained.

We need not consider the allegations in the petition that petitioner

owned an automobile service station and a seed business at the beginning of and during the net worth period and that the purported inventories of such businesses were excluded from the net worth computation. Though the petition indicates that the service station business was discontinued at some unidentified time prior to December 31, 1945, and that the seed business was discontinued during the calendar year 1945, not one scintilla of evidence was introduced by petitioner at the hearing with respect to these businesses. Accordingly, respondent was under no obligation to rebut these allegations. *Wichita Terminal Elevator Co.*, 6 T. C. 1158, 1165 (1946), affd. 162 F. 2d 513 (C. A. 10, 1947). The failure of petitioner to introduce evidence solely within his possession, which, if true, would be favorable to him, gives rise to a presumption that if produced it would be unfavorable and becomes, itself, "evidence of the most convincing character." *Stoumen v. Commissioner*, 208 F. 2d 903 (C. A. 3, 1953); *William G. Lias*, 24 T. C. 280 (1955), affd. 235 F. 2d 879 (C. A. 4, 1956); *Wichita Terminal Elevator Co., supra.*

Our study of the record in this case convinces us that the deficiencies for the years 1945, 1946, 1947, and 1949 were due to fraud with the intent to evade the payment of taxes. Petitioner reported a net income on his returns for these years varying from $2,665.33 to $4,605.52, whereas his income as computed by the net worth method, which took into account the stipulation of facts submitted at the hearing, shows a net income ranging from $13,432.14 to $35,779.82. Although there may be some minor inaccuracies in the net worth computation, our analysis of the various disputed items clearly shows that it is substantially correct for each of the years 1945, 1946, 1947, and 1949. The understatements for these years ranged from $8,826.82 to $32,304.94. Whatever inaccuracies there may have been in the determination of the disputed items in the net worth statement would be too minor to affect our finding that such understatements were substantial. The consistent understatement of substantial amounts of income is persuasive evidence of fraud. *United States v. Calderon*, 348 U. S. 160 (1954); *Rogers v. Commissioner*, 111 F. 2d 987 (C. A. 6, 1940); *Arlette Coat Co.*, 14 T. C. 751 (1950). Moreover, petitioner failed to report any income from interest on his returns for these years although the evidence indicates that he owned notes receivable aggregating approximately $4,000 at the end of 1945 and substantially in excess of $30,000 at the end of each of the remaining years.

He also failed to report a long-term capital gain of $4,543.59 which he realized upon the sale of a one-half interest in his store to his brother, and a long-term capital gain of $1,117.19 which he realized from the sale of his interest in the "B. W. Forsythe" partnership. These gains were both realized in 1946. It should be noted, in petitioner's favor, however, that he did not claim a deduction on his 1949

return for a loss of $876.57 which he realized in that year upon the sale of a tract of land which he had previously operated as a farm.

The circumstances surrounding the unavailability of petitioner's books and records contribute to the inference of fraud. When the revenue agent requested petitioner's books and records he was advised that they could not be located, and when he and petitioner jointly searched the store, they were unable to find any of the books or records. Not until a subsequent meeting did petitioner inform the revenue agent that his brother had maintained the records for many years and that, after discussing the matter with his brother, they had decided that the records had been destroyed after the returns were filed. Moreover, when petitioner did produce a copy of his return for 1941 for the purpose of showing that he had filed a return for that year (in order to avoid the delinquency penalty), pages 3 and 4 of that return were missing. These pages presumably contained material information as to petitioner's inventory at the beginning of the net worth period, and their absence under the circumstances is significant.

We add that while we draw no affirmative inference of fraud from the fact that neither petitioner nor his brother testified in the case, by the same token we cannot assume affirmatively that petitioner had a reasonable explanation which would have refuted the otherwise clear inference of fraud when no such explanation, if it existed, was presented to us by available witnesses.

Since we have found as a fact that the returns for 1945, 1946, 1947, and 1949 were false and fraudulent with intent to evade taxes, the statute of limitations does not apply for any of such years. Sec. 276 (a), I. R. C. 1939.

At the hearing herein, the parties introduced a stipulation of facts which, when applied to the net worth computation, caused a shift in petitioner's income from one taxable year to another. On the basis of these modifications in the net worth computation, respondent claimed additional deficiencies and additions to tax for the taxable years 1941, 1944, 1945, and 1949. Fraud not having been proved for the years 1941 and 1944, they are barred by the statute of limitations. But, for the years 1945 and 1949, the additional deficiencies and additions to tax are sustained since petitioner has stipulated to the correctness of the facts on which they are based, and no claim has been made that respondent erred in the application of such stipulated facts to the net worth computation.

The last issue herein relates to respondent's alternative claim that, in the event the assessment and collection of the deficiency and addition to tax for 1942 are barred by the statute of limitations, he should be permitted to recompute petitioner's tax liability for 1943 under the provisions of section 6 of the Current Tax Payment Act of

1943. However, since respondent has also failed to prove fraud for the year 1943, it is clear that the assessment and collection of any additional tax and additions to tax which might be determined pursuant to such recomputation are also barred by the statute of limitations.

*Decision will be entered under Rule 50.*