Harold Edwin Delaney v. Commissioner.
Delaney v. Commissioner
Docket No. 51430.
United States Tax Court
T.C. Memo 1958-185; 1958 Tax Ct. Memo LEXIS 40; 17 T.C.M. (CCH) 932; T.C.M. (RIA) 58185; October 20, 1958
*40 Mr. Sidney Gelfand, and Bernard Weiss, Esq., 136 E. 57th Street, New York, N. Y., for the petitioner. Scott A. Dahlquist, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: For the year 1946 respondent determined deficiencies in income tax of $178,763.69 and in additions to tax under sections 293(b), 294(d)(1)(A), and 294(d)(2), I.R.C. 1939, of $89,381.85, $18,258.08 and $10,924.84, respectively. Respondent has made a jeopardy assessment. The issues to be decided are: (1) Whether assessment of the deficiencies is barred by the statute of limitations and if not, (2) whether petitioner understated his taxable income in 1946, (3) whether petitioner failed to file a declaration of estimated tax for 1946 without reasonable cause, (4) whether petitioner substantially underestimated his 1946 income tax, and (5) whether any part of the deficiency was due to fraud with intent to evade tax. Findings of Fact Some of the facts were stipulated and are found accordingly. Petitioner, a resident of Ridgewood, New Jersey, filed a timely Federal income tax return for 1946 on the cash basis with the collector of internal revenue for the fifth *41 district of New Jersey. On this return petitioner reported salary income from Caprice Undergarment Co., Inc., of $22,800. Petitioner's wife, Margaret F. Delaney, had salary income of $8,000 in 1946. Petitioner filed a declaration of estimated income tax for 1946 in January 1947. Respondent mailed to petitioner a notice of deficiency dated September 14, 1953 pertaining to the taxable year 1946. In 1945 and for several prior years, petitioner was a partner in the Caprice Undergarment Company. On January 1, 1946, this partnership was incorporated under name of Caprice Undergarment Co., Inc., hereafter called Caprice, Inc. In 1946, Caprice, Inc., had sales and cost of goods sold totaling $989,679.63 and $811,273.47, respectively, and these amounts were reported on its return for that year. Caprice, Inc.'s net income for 1946, after adjustments made by respondent pursuant to an examination in 1949 but prior to the allowance of a net operating loss carry-back, was $79,339.10. Respondent does not contemplate making any further adjustments to this return. The Harding Realty Co., Inc., hereafter called Harding, was incorporated on March 1, 1946 and obtained title on the same day to a piece *42 of property, hereafter called Harding property. Petitioner acquired a 50 per cent interest in Harding in March 1946, and on May 20, 1946 acquired an additional 12 1/2 per cent interest. Clifton Associates, Inc., the vendor of the Harding property, authorized the sale on October 29, 1945 for $175,000. The closing statement on the sale of this property reflected a total consideration of $150,000 before adjustments. Harding computed its basis for income tax purposes for the Harding property by using $150,000 as the initial cost. Clifton Associates, Inc., paid an additional income tax in connection with its sale of the Harding property based on a corrected selling price of $175,000. During the first half of 1946 and for several years prior thereto Rodney G. Benson, Jr., owned a piece of real property, hereafter called the Delawanna property. He had leased this property up until June 1946 to Hoffmann-LaRoche, Inc., which had an option to purchase the property for $125,000. Hoffmann-LaRoche, Inc., through its attorney, notified Benson by letter dated January 25, 1946 that it intended to exercise the option. The Delawanna property was conveyed to Hoffmann-LaRoche, Inc., by a deed dated *43 June 12, 1946. During the first 6 months of 1946, Benson owned an automobile agency which was incorporated under the name of Rodney Benson, Inc. He also owned the real estate used by the automobile agency and an adjoining tract which was leased by Allen B. Du Mont Laboratories, Inc. This lease granted an option to purchase the leased premises for $210,000. All of this real estate was held under the corporate name of Sonben Realty Co., Inc., hereafter called Sonben. At some date prior to May 21, 1946, petitioner negotiated with Benson for the sale of Rodney Benson, Inc., and Sonben. These purchases were completed on July 11, 1946 when petitioner, acting through Delaney-Brussel Motors, Inc., purchased the assets of Rodney Benson, Inc., and acting through Deltex, Inc., purchased the real estate owned by Sonben. Murray Brussel had a 12 per cent interest in each of the purchasing corporations until the end of September 1946 when petitioner obtained full ownership. The closing statement, dated July 11, 1946, shows as the purchase price for the assets of Rodney Benson, Inc., $10,000 plus adjustments, and as the price for the real estate of Sonben, $180,000 less adjustments. Delmade Lingerie, *44 Inc., was incorporated in December 1945, and in January 1946 certificate No. 1 for 100 shares was issued to petitioner. Certificate No. 1 was canceled on an undisclosed date. Certificate Nos. 2 and 3 for 50 shares each were issued to Milton Koenigsberg and Sanford Koenigsberg on February 14, 1946. On October 29, 1946, petitioner purchased a summer residence, including furnishings, at Spring Lake, New Jersey, from Benson and his wife. The amount of transfer revenue stamps attached was based on a purchase price of $17,000. Benson took back a purchase money mortgage of $15,000 from petitioner. Respondent computed petitioner's increase in net worth, after deducting (liabilities) as of December 31, 1945 and December 31, 1946, in the following manner: 12/31/45
12/31/46
Personal checking a/c, Colonial Trust, N.Y.C.
$ 189.75
$ 328.91
Personal checking a/c, Garfield Trust
224.96
Caprice Undergarment Co. - partnership, capital
61,765.64
Caprice Undergarment Corp. - capital
50,000.00
Caprice Undergarment Corp. - loans to officer
(36,758.38)
Harding Realty Corp. - 5/8 capital
( 625.00)
Harding Realty Corp. - loan from H. E. Delaney
16,668.15
Harding Realty Corp. - 5/8 cash unrecorded payment
15,625.00
Delaney Motors, Inc. - capital
45,000.00
Deltex, Inc. - capital
30,000.00
Delaney-Deltex, cash unrecorded payment
126,635.86
Garfield Holding Corp. - 1/3 capital
12,000.00
Delmade Corp. capital stock in H. E. Delaney name
10,000.00
Residence - Ridgewood
30,000.00
30,000.00
Mortgage
(17,755.11)
(16,378.68)
Residence - Spring Lake
27,000.00
Mortgage
(15,000.00)
Mortgage from George Delaney
4,500.00
3,900.00
$78,700.28
$299,870.82
Less: Opening net worth
78,700.28
Increase in net worth
$221,170.54
Add: Living expenses
33,772.07
Income to be accounted for
$254,942.61
Less: Salary reported wife: Margaret F. Delaney
$ 8,000.00
Salary reported Harold E. Delaney
22,800.00
30,800.00
Income from unidentified source
* $224,142.61
*45 The item "Living Expenses" in respondent's net worth computation is partially conceded by petitioner. Respondent alleged in his answer, and petitioner admitted in his reply, that petitioner and his wife had the following expenses in 1946: Charitable contributions
$ 2,435.00
Total taxes (Federal income tax, New
York State income tax, and real
estate tax)
15,402.67
Insurance premiums (life insurance
and fire insurance on two houses)
4,871.60
Interest
687.80
$23,397.07 In addition, respondent determined that petitioner expended the estimated sum of $10,375 for living expenses, itemized in the following manner: Food, groceries - husband, wife, 4 de-
pendent children
$ 3,120.00
Outside meals
1,375.00
Repairs on Ridgewood and summer
residence
500.00
Domestic help
1,000.00
Utilities - both homes
480.00
Fuel - both homes
600.00
Home furnishings - both homes
300.00
Auto - personal use
600.00
Clothing
1,500.00
Personal items
300.00
Medical
600.00
$10,375.00 Petitioner concedes in his reply that "estimated *46 living expenses expended by him during 1946 amounted to $5,600.00," leaving the disputed amount in regard to "Living Expenses" in respondent's net worth computation at $4,775. On March 24, 1953, an indictment was returned against petitioner, Benson and Milton Werksman for conspiring to evade income taxes due from Benson, Milton Werksman, Rodney Benson, Inc., and Sonben for the year 1946. This indictment was dismissed on November 7, 1956, after completion of the presentation of the Government's case on the ground that the complaints did not contain sufficient specificity to identify the offense of conspiracy alleged in the complaints with the offense of conspiracy mentioned in the indictment, that the complaint did not therefore toll the statute of limitations, and that the indictment was returned after the statute had run. Benson was indicted in March 1953 for attempting to evade and defeat his individual income taxes and the income taxes of Rodney Benson, Inc., and Sonben for the year 1946. This indictment was pending at the time of the trial of this case. Opinion It is unfortunate that in a case consuming so much time for all concerned and obvious effort on the part of respondent, *47 he should have permitted himself to found his entire position on two untenable assumptions. The first is "[in] a fraud case before the Tax Court something less than complete exhaustiveness is required since in such case the determination of a deficiency is presumed to be correct." That this is erroneous is too well settled to warrant extended discussion. "[The] deficiency notice is a shield, not a sword. It is a defense where the petitioner has the onus of proof, not a weapon where the respondent has the burden." C. A. Reis, 1 T.C. 9, 13. The second error is one under which the agents of respondent appear to have labored. Their position is that the increase in net worth discovered in a given year can be taken as demonstrating that the increase occurred in that year and the income taxed accordingly in the face not only of a lack of any showing of a likely source of the income, [1] see United States v. Massei, 355 U.S. 595, but even of admissions that the presumptive occasion for the receipt of income was events occurring in prior taxable periods. *48 It is of little moment whether we say as to this that the concession demonstrates the incorrectness of the opening net worth, [2] and thus shows affirmatively that the statement of increase in net worth is incorrect, or whether we merely accept it as supporting petitioner's contention that respondent has not carried his considerable burden of proving fraud, L. Glenn Switzer, 20 T.C. 759, when he has nothing more than a questionable net worth computation to support it. In neither event can we conclude that respondent can succeed on the fraud issue, and without that there can be no deficiency. We have accordingly omitted detailed findings as to the mass of evidence produced by respondent (and petitioner's evidence designed to rebut it) as to so-called "under-the-table" cash payments which respondent insists were added by petitioner to the stated consideration paid for certain real estate and an automobile agency admittedly acquired by him in the tax year. Assuming, without indicating any opinion, that respondent's version of the disputed transactions is correct, and even that such conduct *49 on petitioner's part would be some evidence of a concealment and, therefore, possibly of fraud on his part, they do nothing to carry respondent's burden of proving that the return for the only year in issue, 1946, was fraudulent. This would be true in any event in the light of the unconvincing character of the opening net worth computation. See W. A. Shaw, 27 T.C. 561, 568, affd. (C.A. 6) 252 Fed. (2d) 681. "Also requisite to the use of the net worth method is evidence supporting the inference that the defendant's net worth increases are attributable to currently taxable income." Holland v. United States, 348 U.S. 121, 137. But it is dramatized by the only testimony in this respect, upon which respondent could rely, that of his own agents, that in fact any income producing the cash for these under-the-table payments was earned in earlier years. [3] The result must be that on the principal issue respondent has failed to prove that any income was received by petitioner in 1946 beyond that reported by him, or that his return for that year is false or fraudulent. The statute of limitations thus creates an effective bar and neither the correctness of *50 the deficiency as to the principal amount of tax nor the addition to tax for fraud need be further considered. The imposition of additions to tax under sections 294(d)(1)(A) and 294(d)(2), for failure to file estimate and substantial underestimation of estimated tax, is likewise barred by the statute of limitations. Cf. Harold C. Marbut, 28 T.C. 687. Respondent does not contend otherwise. Decision will be entered for the petitioner. Footnotes
*. Respondent concedes in his brief that the "Income from unidentified source" should be reduced to $216,142.61.↩
1. "Increases in net worth, standing alone, cannot be assumed to be attributable to currently taxable income. But proof of a likely source, from which the jury could reasonably find that the net worth increases sprang, is sufficient." Holland v. United States, 348 U.S. 121, 137-138↩.
2. Petitioner is credited with cash of less than $200 on December 31, 1945.↩
3. Respondent's special agent testified that "[it] is my impression that the money spent by Mr. Delaney during the year 1946 in his acquisition of the capital stock of the Harding Realty Company, and Deltex and Delaney-Brussel Motors, Incorporated, came from his earnings of the Caprice Undergarment Company partnership, and possibly Caprice Undergarment Company corporation, between the years of 1943 and July 11th, 1946." Respondent's revenue agent was even more specific: "THE COURT: * * * It sounds like you are telling me you actually think and the fact is that Mr. Delaney earned this in '42, '43, '44 and '45, and that he can be taxed in 1946. "THE WITNESS: That is my idea, sir * * *."↩