Jacqueline L. Dillow Nuckols v. Commissioner.
Nuckols v. Commissioner
Docket No. 517-69.
United States Tax Court
T.C. Memo 1970-308; 1970 Tax Ct. Memo LEXIS 54; 29 T.C.M. (CCH) 1422; T.C.M. (RIA) 70308; November 3, 1970, Filed *54 Petitioner fraudulently obtained and converted to her own use certain checks issued by the State of West Virginia, and payable to the order of her father. She failed to report any of the amounts thereof in her taxable income. Held, (1) The money unlawfully obtained and converted to her own use by petitioner is includable in her taxable income for the year 1964; (2) at least a part of the underpayment of tax herein was due to fraud within the meaning of section 6653(b), I.R.C. 1954; (3) the return filed by petitioner for the year 1964 was false or fraudulent with intent to evade tax within the meaning of section 6501(c)(1); and (4) the assessment and collection of the deficiency and addition to tax due herein are not barred by the statute of limitations. Held further, (5) petitioner failed to sustain her burden of proving that she furnished more than one-half of the support of her son as provided by section 152(a) and is therefore not entitled to the dependency exemption claim for him. J.B. Fisher, Kanawha Valley Bldg., Charleston, W. Va., for the petitioner. Clarence E. Barnes, for the respondent. BRUCE Memorandum Findings of Fact and Opinion
*56 BRUCE, Judge: Respondent determined a deficiency in the income tax of petitioner for the taxable year 1964 in the amount of $1,992.75 and additions to tax under section 6653(b), I.R.C. 1954[1] of $996.38. Respondent conceded at trial that $2,000 of the proposed adjustment is not income to petitioner. The remaining issues to be decided are: (1) Whether salary and expense checks totaling $4,618.73 issued in 1964 by the State of West Virginia payable to the order of petitioner's father, were wrongfully converted to petitioner's personal use, thereby constituting taxable income to petitioner; (2) Whether petitioner is liable for the 50 percent addition to tax under section 6653 (b) of the Code; (3) Whether assessment and collection of the deficiency in income tax and addition to tax are barred by the statute of limitations; (4) Whether for the taxable year 1964 petitioner provided more than one half of the total support of her son, Robert M. Dillow, thereby entitling her to claim him as a dependency exemption under the provisions of section 151(e) of the Code. A related *57 question contained in this case is whether petitioner is limited to the standard deduction of $1,000 whereas itemized deductions totaling $1,176.91 were claimed. However, this question is controlled by question (1), above, as to petitioner's increased income. Findings of Fact The stipulations of facts, together with the exhibits attached thereto, are incorporated herein by reference. Petitioner's legal residence at the time the petition was filed herein was Shady Side, Maryland; her residence at the time she filed the 1964 income tax return was Charleston, West Virginia. Petitioner filed a timely U.S. individual income tax return (Form 1040) for the taxable year 1964, with the district director of internal revenue, Parkersburg, West Virginia. During 1964, petitioner was a divorcee, having been divorced from her husband in 1951. Her former married name was Dillow. Petitioner's son, Robert M. Dillow, was born in 1948. During 1964, petitioner was employed as a private secretary to the Commissioner of Motor Vehicles, Jack A. Nuckols, in the Department of Motor Vehicles (DMV) for West Virginia. Her salary was $5,650, which was reported on her return. As secretary to the Commissioner, *58 she had autority over the other secretaries in the Department. Petitioner married Jack A. Nuckols in 1966. The Commissioner of the DMV has the sole authority to hire and fire employees for the department. Generally, his office would send to the accounting office, either verbally or in memorandum form, the names of individuals that were hired and the dates 1423 and salaries they would be paid and their job and position. The accounting office would then issue salary checks to those individuals at the salary indicated by the Commissioner's office. During the year 1964, the following checks issued by the State of West Virginia, payable to the order of Jay Rowe, petitioner's father, were deposited on the dates indicated to petitioner's personal banking accounts with the City National Bank of Charleston, West Virginia: Deposit Date
Warrant No. of CheckRegular Account
Amount of Check
4-17-64
790020
$287.52
5-27-64
923283
291.01
8-11-64
119057
369.84
9-26-64
227957
260.59
10- 1-16
245623
369.84
Special Account
8-10-64
120962
227.99
In addition to the foregoing listed checks, the following checks issued during the year 1964 by the State *59 of West Virginia, payable to the order of petitioner's father, Jay Rowe, were either cashed by petitioner or deposited to her personal banking accounts for her own use: Warrant No.
Date of Check
Amount of Check
757917
4- 7-64
$334.75
831708
4-30-64
354.96
940940
5-29-64
369.84
042826
6-26-64
319.84
042361
6-30-64
369.84
198765
8-31-64
369.84
208460
9- 5-64
229.38
295543
10-20-64
264.16
427804
12-22-64
199.33
No part of the proceeds of the above-referred-to checks was reported by petitioner on her income tax return for 1964. The foregoing checks, totaling $4,618.73 issued by the State of West Virginia purported to be either salary or expense checks payable to Jay Rowe, petitioner's father, as an employe of the DMV. By the personal direction of Jack A. Nuckols, the Commissioner of Motor Vehicles, each of the "salary and expense" checks issued by the State of West Virginia in 1964, payable to Jay Rowe, were delivered personally to either himself or his private secretary, the petitioner herein. In addition, at his personal direction, the Internal Revenue Service Form W-2, reflecting the payment of these wages to Jay Rowe was delivered *60 to him directly. Each of the foregoing listed checks issued by the State of West Virginia in 1964, payable to the order of Jay Rowe, reflect an initial endorsement of "Jay Rowe" on the reverse side thereof, which petitioner personally affixed thereon. Except for the one bearing No. 427804, each check also reflects immediately below the name of Jay Rowe a second endorsement written by petitioner using her married name at the time of "Dillow." None of said checks were endorsed by Jay Rowe. During 1964, petitioner caused several travel vouchers to be transmitted to the DMV, State of West Virginia, in the name of her father, Jay Rowe, covering alleged travel performed by Jay Rowe for each of the months, April through October 1964. Each of the foregoing travel vouchers reflects the name of Jay Rowe thereon purportedly affixed under oath in the presence of a notary public. However, petitioner has conceded that in each instance, she affixed the name of Jay Rowe on said travel vouchers. She personally prepared and typed some of the travel vouchers. In no instance was Jay Rowe present before a notary public as the vouchers would otherwise indicate. Each travel voucher caused by petitioner *61 to be submitted to the State of West Virginia resulted in the issuance of a check by the State, payable to Jay Rowe, petitioner's father, as follows: Date of Voucher
Date of Check
Warrant No.
Amount
4-10-64
4-14-64
790020
$287.52
5-15-64
5-21-64
923283
291.01
6-22-64
6-26-64
042826
319.84
7-15-64
7-27-64
120962
227.99
9- 2-64
9- 5-64
208460
229.38
9-11-64
9-18-64
227957
260.59
10-15-64
10-20-64
295543
264.16
12-16-64
12-22-64
427804
199.33
The name of Jay Rowe initially appeared on the employee rolls of the DMV, State of West Virginia, as an investigator for the department, on March 1, 1964; said name disappeared from the rolls on September 30, 1964 and did not appear thereon after that date. Notwithstanding the fact that the name of Jay Rowe did not appear on the employee rolls for the State of West Virginia, DMV after September 30, 1964, a travel voucher was submitted by petitioner on December 16, 1964 for alleged travel performed by her father, Jay Rowe, for the DMV throughout the month of October 1964. The purported travel reflected on the travel vouchers submitted to the State of West Virginia in the name of Jay Rowe *62 for each of the months, April through 1424 October 1964, amounts to an average of 2,550 miles for each month. The vouchers also reflect an average monthly reimbursement of $52.33 for meals. They also averaged approximately fourteen days per month travel. All travel was reflected on the vouchers as having been performed by Jay Rowe in his personal car. In 1964, petitioner's father, Jay Rowe, was approximately 70 years old. He and his wife, Gladys Lucille Rowe, resided in Peach Creek, West Virginia. They were married in 1927. Throughout the year 1964, Jay Rowe received retired cash benefits from the Social Security Administration in the amount of $118 per month. He also received a pension of $100 per month from the State of West Virginia, Department of Public Safety. He first started receiving Social Security retirement benefits in 1961. If he earned over $1,200 during 1964, he was required to report the same to the Social Security Administration. He made no such report of having received income in excess of $1,200 for the year 1964. Jay was employed during 1964, for the months of January through June, by Minton Chevrolet Company, Logan, West Virginia. Pursuant to Jay's request, *63 his salary on this job was not to exceed $100 per month. This request was made in order that his salary would not exceed the amount of earned income permitted by the Social Security Administration before the monthly benefit is reduced. Among other things, Rowe's duties in this job included that of assisting in the collection of delinquent accounts; said duty was performed by Rowe in an automobile furnished by Dick Willis, Manager of the Chevrolet Company. An Internal Revenue Service Form W-2 was issued by Minton Chevrolet Company to Jay Rowe reflecting the $600 earned by him during 1964. Jay Rowe did not work for the DMV, State of West Virginia in 1964 nor did he receive any salary or expense checks from said department in the year 1964. He never traveled for the DMV, State of West Virginia, in his own automobile or in any other automobile. In addition, Jay Rowe never authorized petitioner or anyone else to sign his name to State of West Virginia employment application forms or to payroll checks, travel checks or travel vouchers. During the year 1964, petitioner's son, Robert M. Dillow, was a student for approximately nine months of the year at a military school. During the summer *64 period, July and August, he worked for the DMV, State of West Virginia. His earnings for 1964 approximated $605. Petitioner has produced no evidence showing the amount of money, if any, expended by her for Robert's support, or the total amount of his support for 1964. Petitioner filed a timely Federal income tax return (Form 1040) in which she reported her salary of $5,650 received from the DMV. The statutory notice determining the deficiency in income tax against the petitioner for taxable year 1964 was sent to petitioner by certified mail on November 26, 1968. Petitioner fraudulently obtained and converted to her own use salary and expense checks issued during 1964 by the State of West Virginia payable to Jay Rowe. At least some part of the underpayment of tax for the year in issue was due to fraud and the return filed by petitioner for 1964 was false or fraudulent with intent to evade tax. Opinion At the outset, it should be noted that the issues involved are factual. Petitioner has the burden of overcoming the presumption of the correctness of the deficiencies determined by respondent. Rule 32, Tax Court Rules of Practice.
No brief has been filed by or on behalf of the *65 petitioner with respect to any of the issues presented. Thus, it might be presumed, particularly in light of the evidence adduced herein, that petitioner no longer contends that the deficiencies determined by the respondent are incorrect. We have nevertheless found as a fact that petitioner fraudulently obtained and converted to her own use the salary and expense checks issued by the State of West Virginia and payable to the order of her father. It has been well established by the courts that unlawful gains must be included in the taxable income of the recipient, United States v. Sullivan, 274 U.S. 259 (1927); Rutkin v. United States, 343 U.S. 130 (1952); James v. United States, 366 U.S. 213 (1961). Section 6653(b) of the Code provides as follows: SEC. 6653. FAILURE TO PAY TAX. * * * (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) 1425 of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). The burden *66 of proof in respect to the issue of fraud is that of the respondent. Section 7454 of the Code. Further, fraud cannot merely be presumed, but must be shown by clear and convincing evidence. William G. Stratton, 54 T.C. 255 (1970); W.A. Shaw, 27 T.C. 561 (1956); Frank Imburgia, 22 T.C. 1002 (1954). In the present case the record is replete with evidence of fraudulent intent on the part of petitioner, both in the acquisition of her dishonest gains and in her attempt to conceal it from the taxing authority. The explanation given for not reporting this money - that it was a gift from her father - is clearly not supported by the evidence. The evidence establishes that petitioner's father did not work for the DMV in 1964, or at any other time, that he did not prepare or sign any expense vouchers for work performed for the DMV during the year 1964, and did not authorize anyone to sign his name on any such vouchers or on any checks issued by the State of West Virginia for work performed for the DMV and that he did not receive any of the checks involved. The checks in question were delivered directly to petitioner, or to the office in which she was employed, *67 and there is no evidence that her father was aware of such checks. The determination of the addition to tax provided by section 6653(b) has been upheld in several instances where illegal gains have not been reported in the income of the recipient. Henry C. Boucher, 18 T.C. 710, (1952); Jacob D. Farber, 43 T.C. 407 (1965); Thompson v. Commissioner, 333 F. 2d 845 (C.A. 4, 1964), affirming per curiam a Memorandum Opinion of this Court, T.C. Memo. 1963-147. On the basis of the entire record and the reasons discussed above, we hold that petitioner is liable for the additions to tax. It follows from our holding upon the fraud issue, that the return filed by petitioner for 1964 was false or fraudulent with intent to evade tax under section 6501(c) (1) [2] and therefore, the statute of limitations under section 6501 has not run. Section *68 151(e) permits an exemption of $600 during the year in issue for each of a taxpayer's dependents. The term "dependent" is defined in section 152(a) to include certain individuals "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer." Section 152 (a)(1) includes "[a] son or daughter of the taxpayer," among the individuals who can qualify for "dependent" status. The evidence establishes that petitioner's son was 16 years old in 1964 and was a student for more than 5 months during that year. Thus, he is in the class of dependents for whom an exemption was allowable. Although the statutory requirements were called to the attention of petitioner's counsel at the time of trial, petitioner failed to establish either the amount that she contributed toward her son's support or the total amount of such support. Thus, she has not met the burden of proof required on this issue. In order that recognition may be given to respondent's concession, Decision will be entered under Rule 50. Footnotes
1. All section references shall be to the Internal Revenue Code of 1954, as amended, unless specified otherwise.↩
2. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (c) Exceptions. - (1) False return. - In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.↩