GEORGE N. PELLETIER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pelletier v. Commissioner
Docket No. 18357-87.
United States Tax Court
T.C. Memo 1989-304; 1989 Tax Ct. Memo LEXIS 303; 57 T.C.M. (CCH) 785; T.C.M. (RIA) 89304; June 21, 1989; As corrected July 24, 1989 *303 Petitioner operated an income tax return preparation service and was paid fees from clients for these services and additional fees for reporting fictitious deductions on clients' returns. For many of his clients, petitioner reported fictitious partnership losses with respect to partnerships some of which, petitioner represented, sold manure in the United States to third world countries as fertilizer. To evade income tax on fees paid by petitioner's clients for petitioner's "loopholes", no fees were paid directly to petitioner. Instead, petitioner arranged it so that his fees were payable by check nominally to an organization that did not exist, or were payable in cash at a local coin store which would remit fees to petitioner at least partially in gold and silver coins. For the years at issue, petitioner did not file an income tax return because he claimed he was an uncompensated employee of an organization which he claimed actually performed the services. Held, petitioner is subject to the additions to tax under section 6653(b). George N. Pelletier, pro se. Kenneth A. Burns, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6653(b)(1)
Sec. 6654
Sec. 6661
1979
$ 15,933.00
$  7,967.00 --
$   667.86
--
1980
11,104.00
5,552.00
--
707.50
--
1981
35,452.00
17,726.00
--
2,723.00
--
1982
56,453.00
--
$ 28,226.00
5,496.21
$ 14,113.25
*305 With respect to 1982, respondent also determined that petitioner was subject to the additions to tax under section 6653(b)(2) equal to 50 percent of the interest due on the underpayment. At trial, after petitioner presented his case, respondent made an oral motion that the Court determine that petitioner had failed to adduce sufficient evidence to meet his burden of proof with respect to whether petitioner was subject to deficiencies in tax and the additions to tax in sections 6654 and 6661, as determined by respondent. Respondent's motion was granted. The sole issue is whether petitioner is subject to the addition to tax for fraud pursuant to section 6653(b) for the years at issue. FINDINGS OF FACT Some of the facts have been stipulated. The facts set forth in the stipulation are incorporated as our findings by this reference. Petitioner resided in Las Vegas, Nevada, at the time he filed his petition in this case. From 1963 *306 through the years at issue, petitioner held himself out to the public as an accountant, tax return preparer and/or tax consultant in Las Vegas, Nevada. Petitioner has a bachelor of science degree with a major in accounting and business administration from Bryant College in Providence, Rhode Island. During the years at issue, petitioner, having filed an application to represent taxpayers before the Internal Revenue Service, was enrolled to practice before the Internal Revenue Service. Petitioner operated a "tax return preparation service" during the years at issue and prepared the income tax returns of many clients. Petitioner developed a reputation among his clients for his creativity in exploiting what he told his clients were "loopholes" in the tax laws which could be utilized for tax advantage by his clients. The most significant "loophole" dealt with the creation of fictitious partnership losses which petitioner reported on many of his clients' income tax returns. Many of petitioner's clients were able to substantially reduce their income tax liabilities or receive a tax refund from the Internal Revenue Service (Service) because petitioner, in preparing their returns, claimed *307 fictitious partnership losses. Most, if not all, of petitioner's "loopholes" were blatantly fraudulent. For many clients, petitioner reported false schedule C expenses deductions and false charitable contribution deductions in addition to false partnership losses. Petitioner's scheme of reporting false partnership losses for his clients fit a common pattern. A client would come to petitioner's office to have petitioner prepare that client's income tax return. Petitioner would inform his client that, if the client made an "investment" in a partnership, the client could claim a distributive share of a net loss from a partnership as a deduction for the previous taxable year and on the return petitioner was preparing. Petitioner further informed his clients that the "investments" in these loss-generating partnerships were legitimate means of reducing taxes that these clients would otherwise have to pay. Petitioner represented to his clients that there were partners in these partnerships receiving distributive shares of losses which more than offset these partners' taxable incomes. Petitioner told his clients that partnerships which had partners with such net losses could, in effect, *308 retroactively pass these losses along to a third party if that third party made an "investment" in the partnership. According to petitioner's advice, any third party who made an "investment" in a partnership that had partners with net losses could claim a loss on their own Federal income tax returns equal to ten times the "investment" made by that individual to the partnership. Petitioner would tell his clients that he was the intermediary between these loss-generating partnerships and any party who sought to claim the excess losses that were unused by the partners in these partnerships. Petitioner, however, also explained to his clients that the "investment" was not designed to make money for the client, but was simply a way to reduce an "investor's" income tax liability. Despite petitioner's representations to his clients, petitioner never made investments in partnerships on behalf of any client. Instead, petitioner charged each client for whom he reported the false partnership losses a fee for their "investment" in a specified partnership, which fee was paid to, and kept by petitioner. After clients paid petitioner this fee, petitioner would tell his clients that they then held *309 an interest in one of a number of partnerships which petitioner would identify to the client. Petitioner would then report a loss equal to ten times the "investment" on the income tax return of the client who paid the fee for the "investment." Petitioner would also provide each client who participated in this scheme with false substantiating documentation that made it appear that the client had actually invested in a partnership that was generating net losses. In fact, the partnerships utilized by petitioner did not exist. As one example, petitioner accepted a fee of $ 400 from one client for an "investment" in a partnership called C.N. Fertilizer. Petitioner informed this client that C.N. Fertilizer's sole purpose was to sell manure from the United States as fertilizer to third-world countries. Petitioner reported on this client's return that C.N. Fertilizer generated a net loss of $ 4,000 in the prior taxable year that could be reported on the client's return for the prior taxable year. For this $ 400 "investment," petitioner provided the client with substantiating documentation that made it appear that this client had actually invested in a partnership called C.N. Fertilizer *310 and that this client had actually received a distributive share of the partnership's net losses in the prior year. For many of petitioner's clients, the smell of the manure "investment" attracted the attention of the Service which ultimately audited many, if not all, of petitioner's clients. The witnesses who were formerly petitioner's clients and who testified at trial on behalf of respondent acknowledged that these investments were fictitious and essentially were figments of petitioner's imagination. During each of the years in issue, petitioner prepared approximately 500 tax returns for clients but did not file a tax return for himself. The standard fees charged for preparation of each tax return by petitioner averaged approximately $ 63, $ 74, $ 81, and $ 86 for 1979, 1980, 1981, and 1982, respectively. If petitioner's clients wanted fictitious partnership losses with supporting false documentation, false Schedule C expenses, or false charitable contribution deductions, the fee often exceeded $ 500 per return. Petitioner went to extreme lengths to hide his income from detection by the Service. In 1978, petitioner formed what he terms was an unincorporated business organization *311 called Atlantic-Pacific Financial (APF). This organization was formed, ostensibly, as a trust. Petitioner executed a "Contract and Declaration of Common Law Trust Organization" that was to signify the formation of APF as a separate entity. Petitioner claimed to be president and that his wife was secretary of APF. Petitioner's purpose in creating APF, which existed only on paper, was to create the impression that the fees paid for his tax return preparation services were income to APF and not to him. To make APF appear to be a separate tax-paying entity, petitioner applied for and received an employer identification number from the Service for APF. Petitioner represented in his application to the Service that the nature of APF's business was to provide "management services." Petitioner and his wife also established a checking account in the name of APF, an account for which petitioner and his wife had signatory authority. Petitioner did not have any bank accounts in his own name. Rather, he and his wife used the checking account in the name of Atlantic-Pacific Financial as their personal account. As payment for petitioner's tax return preparation services, petitioner would *312 request that each client either pay by check payable to APF or, if the client wished to pay cash, that the client make payment at a nearby coin store. In 1982, petitioner did not accept cash from his clients at his place of business. Petitioner requested that clients travel to a nearby coin store and pay the fee for tax return preparation services into petitioner's account at the coin store. The coin store personnel were aware that petitioner's clients would be tendering money for his account. Although it is not entirely clear from the record what form petitioner received the proceeds tendered by his clients with the coin store, it appears that at least some portion of these proceeds were received by petitioner in the form of gold and silver coins. When petitioner was being audited, the revenue agent assigned to examine petitioner's tax liability for the years in issue requested that petitioner provide books and records of his tax preparation services from which petitioner's tax liability could be computed. Petitioner did not provide any books and records for examination. At the conclusion of the audit of petitioner's tax years at issue, the revenue agent sent petitioner a *313 report of Income Tax Examination Changes reflecting the revenue agent's findings as to petitioner's liability. Petitioner responded with a nine page letter replete with tax protester arguments denying he had any taxable income. In 1984, petitioner was convicted of 22 counts of aiding and abetting in the preparation of false tax returns in violation of Title 26, section 7206(2) of the United States Code. OPINION The issue is whether petitioner is subject to the addition to tax for fraud as provided by section 6653(b). Fraud consists of the intent to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). To prevail, respondent has the burden of proving by clear and convincing evidence that an underpayment exists and that at least a portion of the underpayment is attributable to fraud. Sec. 7454(a); Rule 142(b); Shaw v. Commisisoner,27 T.C. 561, 569-570 (1956). Since direct evidence of fraudulent intent is seldom available, its existence may be determined from the entire course of conduct of the taxpayer and surrounding circumstances. *314 Stone v. Commissioner,56 T.C. 213, 223-224 (1971). Failure to file tax returns may be considered in connection with other facts in determining whether a taxpayer's underpayment of income taxes owing is due to fraud. Rowlee v. Commissioner, supra at 1124. However, a failure to file returns by itself does not establish fraud. Kotmair v. Commissioner,86 T.C. 1253, 1260 (1986). Engaging in conduct which is likely to mislead or conceal is evidence of fraud. Spies v. United States,317 U.S. 492, 499 (1943). A taxpayer's dishonesty in business transactions or a willingness to defraud others may indicate a willingness to evade taxes. Afshar v. Commissioner,T.C. Memo. 1981-241, affd. without published opinion 692 F.2d 751 (4th Cir. 1982). From the uncontroverted record in this case, we find that petitioner failed to report his taxable income from his tax preparing services for all years at issue. As a college educated accountant with over 20 years' experience, petitioner was well aware of his obligation to file income tax returns and to pay taxes owing. Nevertheless, petitioner did not *315 file returns for the years at issue and actively engaged in conduct to conceal the fact that he had substantial unreported income. Petitioner's methods at avoiding the payment of taxes were crude at best. Petitioner believed that he could create a paper trail that would make it appear that APF earned the income received for his services and that he was an unpaid employee of APF. We find it outrageous that petitioner believed he could be as successful in deceiving this Court into believing that he had no reportable income as he was in deceiving his clients that they could substantially reduce their taxes through his fabricated "loopholes" in the tax laws. In all, petitioner practiced what he preached. He fraudulently failed to report his income just as he had encouraged his clients to file tax returns that fraudulently underreported their respective incomes. Accordingly, we hold that respondent has established by clear and convincing evidence that petitioner fraudulently underpaid his 1979, 1980, 1981, and 1982 Federal income tax within the meaning of section 6653(b). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code of 1954, as amended and in effect during the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩