T.C. Memo. 2009-300

UNITED STATES TAX COURT

DENNIS R. DI RICCO AND CONNIE D. DI RICCO, a.k.a.
CORNELIA PATRICIA DOHERTY, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25097-06.                    Filed December 22, 2009.

<u>Daniel L. Sheehan</u>, for petitioner Dennis R. Di Ricco.

<u>John C. Suttle</u>, for petitioner Connie D. Di Ricco.

<u>Catherine G. Chang</u> and <u>Jon D. Feldhammer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax for 1991 and 1992 (years at
issue) and determined that Dennis R. Di Ricco (petitioner) is

liable for the fraud penalty under section 6663.[1]  The primary issue is whether respondent has proven by clear and convincing evidence that petitioner is liable for the fraud penalty.[2]  We hold that he is not.  We therefore need not determine other issues relating to the deficiencies because the limitations period for assessment has expired regarding them.

FINDINGS OF FACT

The parties have stipulated some facts.  The seven stipulations of facts and their accompanying exhibits are incorporated by this reference and are so found.  Petitioners are married and resided in California at the time they filed the petition.

Petitioner practiced law until 1989.  His legal practice was split between tax work and helping startup companies go public. He raised capital for these companies through private placements. Petitioner would determine the fair market value of a company and negotiate deals between the company and prospective investors. Investors provided capital hoping that their initial investment would multiply in subsequent public offerings.  The stock of one

---

[1]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]Respondent has conceded that petitioners did not receive constructive dividends.  All other adjustments were computational to reflect increases in petitioners' adjusted gross income.

such company, Audre, Inc., increased from pennies per share to over $6 per share.

Petitioners personally invested in private placements for some of the companies. Petitioner's wholly owned corporation, Dennis R. Di Ricco, a professional corporation (DPC), also invested in some of the companies. Petitioners and DPC eventually acquired more than 200,000 and 2 million shares of Audre, Inc., respectively.

In addition, DPC arranged bridge loans between the companies and petitioner's clients. Some of the bridge loans went into default after petitioner was arrested in 1988 on charges related to drug charges against a client. Petitioner was sentenced to five years probation, and he feared that any violation of his probation would result in prison time. Petitioner's probation officer, Danny Martinez, demanded that DPC repay the bridge loans as a condition of petitioner's probation.

DPC needed to sell stock to repay the loans. The stock was thinly traded, and petitioner feared that selling it would cause its value to plummet. Petitioner and his stockbroker established multiple nominee accounts to sell the stock while also attempting to stabilize the market. DPC then repaid the loans with the proceeds from the stock sales.

Mr. Martinez closely monitored DPC's repayment of the loans. He inspected petitioner's stock statements and bank accounts

during unannounced visits to petitioner's office.  In addition, petitioner and his secretary reported every stock sale made by petitioners, DPC, and the nominee accounts to Mr. Martinez in his monthly probation reports.

Petitioner continued to work with startup companies through his wholly owned corporation, Dennis R. Di Ricco, Inc. (DINC), after resigning from the California State bar in 1989.  DPC also continued to own stock and sell stock during the years at issue even though DPC was not an operating law corporation during this time.

The Internal Revenue Service (IRS) audited petitioner, his wife, or petitioner's corporations every year from 1982 to 1993. Revenue Agent Tom Borgo, a childhood acquaintance of petitioner, audited petitioner and DPC for 1991 and 1992 and referred the case for criminal prosecution.  The Department of Justice declined to prosecute the case as a criminal matter and referred the case for civil examination.  Mr. Borgo began to ask questions about petitioner's return for 1993 before it was due.  Petitioner informed the IRS by letter that he was hesitant to file a personal return for 1993 without assurances that Mr. Borgo would not immediately refer him for criminal prosecution.  Mr. Borgo did, in fact, refer petitioner for criminal prosecution, and petitioner pled guilty under section 7212(a) to obstruction of justice for failing to file a personal income tax return for 1993

while continuing to seek extensions.  Respondent has not,
however, assessed any unpaid tax for 1993.

Respondent issued petitioners a deficiency notice for 1991
and 1992 on September 6, 2006, 15 years after the years at issue.
Respondent determined in the deficiency notice that petitioner
was liable for a $118,899 fraud penalty for 1991 and a $1,150,804
fraud penalty for 1992.  Respondent also determined in the
deficiency notice the deficiencies[3] in petitioners' Federal
income tax resulting from the stock sales.  Petitioners timely
filed a petition.

                              OPINION

Respondent primarily argues that petitioner underreported
income attributable to the stock sales and that the resulting
underpayment of tax is attributable to fraud.  Petitioner
counters that he did not intend to evade tax and believes that
any reportable gains for the years at issue were those of DPC or
DINC, entities that were not otherwise required to file returns.
Petitioner further argues that the deficiencies were determined
after the 3-year limitations period expired for assessing tax
absent fraud.  Sec. 6501(a), (c)(1).  We agree.  None of the
underpayment of tax for either of the years in issue was shown,
by clear and convincing evidence, to be due to fraud.

---

[3]Respondent determined a $158,531 deficiency in petitioners'
Federal income tax for 1991 and a $1,534,406 deficiency for 1992.
Amounts have been rounded to the nearest dollar.

We now address fraud.  Fraud is an intentional wrongdoing on the part of the taxpayer with the specific purpose of evading a tax believed to be owing.  Edelson v. Commissioner, 829 F.2d 828, 833 (9th Cir. 1987), affg. T.C. Memo. 1986-223; Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985), affg. T.C. Memo. 1983-249.  The Commissioner bears the burden of proving fraud by clear and convincing evidence.  Sec. 7454(a); Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601.  The clear and convincing standard applies to both the question whether an underpayment exists and whether that underpayment is attributable to fraud.  Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).  This high standard precludes the presumption of correctness that attaches to a deficiency determination from extending to a fraud determination.  See Smith v. Commissioner, 926 F.2d 1470, 1474-1475 (6th Cir. 1991), affg. 91 T.C. 1049 (1988).

Fraud is never presumed and must be established by independent evidence that establishes fraudulent intent.  Edelson v. Commissioner, supra at 833; Beaver v. Commissioner, 55 T.C. 85, 92 (1970).  Fraud may be proven by circumstantial evidence because direct evidence of the taxpayer's fraudulent intent is seldom available.  Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, 80 T.C. 1111 (1983); Gajewski v. Commissioner, 67 T.C. 181, 200 (1976), affd. without published

opinion 578 F.2d 1383 (8th Cir. 1978). Mere suspicion is not enough, however. Katz v. Commissioner, 90 T.C. 1130, 1144 (1988); Shaw v. Commissioner, 27 T.C. 561, 569-570 (1956), affd. 252 F.2d 681 (6th Cir. 1958).

Respondent did not establish by clear and convincing evidence that petitioner fraudulently intended to evade tax.[4] See sec. 7454(a); Rule 142(b). Respondent had more than 15 years to build a case against petitioner. Yet respondent did not provide sufficient evidence to establish that petitioner acted with the intent to evade tax or that the gains in the nominee accounts belonged to petitioner.[5] Instead, respondent focused on attacking petitioner's character[6] by presenting to the Court a string of witnesses who testified to personal grievances they had with petitioner. Some of these witnesses had interests adverse to petitioner based upon their prior representations to the Government. We did not find all of respondent's witnesses credible, and those that we did find credible failed to establish

---

[4]Secs. 6501(c)(1), 6653(b), and 6663 all require the same elements for respondent to establish fraud. See Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 548 (2000); Mobley v. Commissioner, T.C. Memo. 1993-60, affd. without published opinion 33 F.3d 1382 (11th Cir. 1994).

[5]Respondent conceded the constructive dividend issue after a lengthy trial.

[6]Respondent stated on brief that "petitioner paralyzed" a man who was a passenger in a car driven by petitioner. The accident, which occurred 40 years ago while petitioner was in college, was investigated, and no one was found to be at fault.

fraudulent intent on petitioner's part. Moreover, the mere failure to report income by a taxpayer does not, by itself, establish fraudulent intent. Pappas v. Commissioner, T.C. Memo. 1981-639.

Respondent also relied on petitioner's plea under section 7212 to argue that petitioner had fraudulent intent. The fact that petitioner entered into a plea agreement is not dispositive. See Carter v. Commissioner, T.C. Memo. 2003-235 (taxpayer established stock trading account in the name of third party to circumvent his employer's prohibition against trading company stock). Petitioner's plea for failure to file a return for 1993 does not establish that petitioner fraudulently omitted income in 1991 or 1992. Further, a similar admission regarding corporate returns is consistent with petitioner's argument that unreported gains during the years at issue were attributable to DPC. It is a fundamental principle of tax law that income is taxed to the person who earns it. Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111, 114-115 (1930). Petitioners reported income from sales of stock on their joint returns for the years at issue. Respondent has not established that petitioners were required to report any additional sales.

In addition, respondent has not shown that petitioner used the nominee accounts so that he could fraudulently underreport his income. Petitioner had a plausible explanation for why he

established the nominee accounts.  He used the accounts to sell stocks owned by DPC so that he could repay DPC's bridge loans without destroying the stocks' value.  His actions were not meant to hide the accounts and fraudulently underreport income.  His actions were meant to stabilize the value of the stock.

We find that respondent has not clearly and convincingly proven fraud on petitioner's part for the years at issue, and we so hold.  Our conclusion is based on the record as a whole, taking into account our determination as to the credibility of petitioners and the other witnesses presented at trial. Accordingly, the assessment of tax and penalties for the years at issue is barred by the statute of limitations.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioners</u>.